**Luis Eduardo LARA, Appellant**

v.

**The STATE of Texas, Appellee**

**NO. 14–15–00581–CR, NO. 14–15–00582–CR, NO. 14–15–00583–CR**

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed November 29, 2016.

Rebecca Klaren, Galveston, TX, for State.

Greg Russell, Galveston, TX, for Appellee.

Panel consists of Justices Boyce, Christopher, and Jamison.

## OPINION

William J. Boyce, Justice

Appellant Luis Eduardo Lara appeals his convictions for sexual assault of a child,[1] indecency with a child,[2] and continuous sexual abuse of a child.[3] He argues that the trial court erred by allowing the State to (1) introduce extraneous offense evidence without providing notice to appellant; and (2) "consolidate all three cases for trial." We affirm.

---

1. *See* Tex. Penal Code Ann. § 22.011(a), (c)(1) (Vernon 2011).

2. *See* Tex. Penal Code Ann. § 21.11(a) (Vernon 2011).

3. *See* Tex. Penal Code Ann. § 21.02 (Vernon Supp. 2016).

## BACKGROUND

Appellant was about 20 years old when he met complainants John Jenkins, John Doe, and John Smith at a skate park in Galveston.[4] Complainants were young teenagers at the time they met appellant. They all became friends with appellant and spent a lot of time with him and other friends skating at the skate park and attending skating competitions and other events. After the three complainants accused appellant of sexual abuse, the police started investigating the complainants' allegations.

Appellant was indicted on October 23, 2014, in trial court cause number 14CR2148, for the offense of sexual assault of a child; the indictment alleged that appellant caused the "sexual organ of John Jenkins (a pseudonym), a child who was then and there younger than 17 years of age, to contact or penetrate the mouth of the defendant."

Appellant was indicted on October 23, 2014, in trial court cause number 14CR2149, for the offense of indecency with a child. The indictment alleged that appellant "did then and there, with the intent to arouse or gratify the sexual desire of [defendant] or John Smith (a pseudonym), intentionally or knowingly engage in sexual contact with John Smith (a pseudonym) by touching the genitals of John Smith (a pseudonym), a child younger than 17 years of age, with the Defendant's hand."

Appellant was indicted on October 23, 2014, in trial court cause number 14CR2150, for the offense of continuous sexual abuse of a child. The indictment alleged that appellant "did then and there,

during a period that was 30 or more days in duration," from December 1, 2013, to March 29, 2014, "when the defendant was 17 years of age or older, commit two or more acts of sexual abuse against a child younger than 14 years of age, namely ... intentionally or knowingly contact the sexual organ of John Doe (a pseudonym) with the Defendant's hand" in December 2013; "intentionally or knowingly contact the sexual organ of John Doe (a pseudonym) with the Defendant's hand" in February 2014; and "intentionally or knowingly cause the sexual organ of John Doe (a pseudonym) to contact or penetrate the Defendant's mouth" in March 2014.

The trial court granted the State's motion to consolidate the three causes pending against appellant. A jury trial was held for all three causes from June 1, 2015, to June 5, 2015.

At trial, appellant objected to the State introducing evidence of extraneous offenses pursuant to Code of Criminal Procedure article 38.37,[5] arguing that the State did not provide notice to appellant of all of the extraneous offenses it wanted to introduce through the testimony of John Jenkins. Appellant argued that the State provided notice only that Jenkins would testify regarding two instances of sexual abuse by appellant when it intended to introduce evidence of three additional and later-disclosed instances of sexual abuse. The trial court ruled that the State substantially complied with the notice requirement and "allow[ed] testimony of ... the additional three extraneous offenses in addition to the two that [Jenkins] was originally going to testify to."

Jenkins testified that appellant sexually abused him five times over seven to eight

---

4. Pseudonyms have been used for each complainant in the trial court; we continue to use the same pseudonyms on appeal. We also use fictitious names for the complainants' friends.

5. *See* Tex. Code Crim. Proc. Ann. art. 38.37 (Vernon Supp. 2016).

months. He testified that the first incident occurred at appellant's house in 2013 when Jenkins was 15 years old. Jenkins testified that he fell asleep on appellant's bed but "remember[s] waking up with [appellant's] hand around my genitalia and him going down and actually giving me oral sex." Jenkins stated that he told appellant to stop and pushed appellant away.

Jenkins testified that the second incident occurred at appellant's house several months after the first incident. Jenkins testified that he was asleep on appellant's bed and woke up to see appellant touching his genitalia under his clothing. Jenkins testified that he pulled appellant's hand out of his underwear and pants and told appellant to stop.

The third incident took place at the home of Jenkins's friend John Gray. Jenkins testified that he fell asleep on the couch in Gray's house after he believed appellant had fallen asleep. Jenkins woke up when he realized that appellant was trying to grab his genitalia through the hole of his boxers. Jenkins told appellant to stop.

The fourth incident occurred at the home of Jenkins's friend John White in Marble Falls where Jenkins, appellant, and a few other friends spent the night after attending a car show. Jenkins testified he was asleep on the couch in the living room. Jenkins stated, "I had a blanket over me and [appellant], like, tried to grab my genitalia through my pants and, like, kept trying to fondle it. And I woke up to him doing that, and I told him to stop."

The last incident took place at the home of Jenkins's friend John Black. Jenkins testified that he was asleep on the couch but woke up when appellant tried to "grab [his] genitalia through the pants. And, again, I told him to stop, and he kept saying, like, Please, come on. Let's try this. All of the other kids are doing it, or I did it with [complainant John Smith] . . . ."

Complainant John Doe also testified at trial that appellant sexually abused him. Doe testified that the first incident occurred at appellant's house in 2013 when he was 12 years old. Doe testified he was asleep on appellant's bed but woke up and saw appellant had unzipped Doe's pants, taken out Doe's penis and started stroking it with his hand. Doe testified that appellant then stopped stroking him. He stated, "I turn myself over and zip my pants up and I act like I woke up. And so I checked my phone. It was 4:28. And I was—I was just so, like—I don't know. I couldn't believe it. I—I just was denying it in my head and didn't know what to think. I was in shock. I was sweating. I was scared."

Doe testified that the second incident occurred in 2014 when he spent the night at appellant's house. Doe was sleeping on the floor this time but woke up when appellant tried to open his pants. Doe stated that appellant could not open his pants but touched his penis over his clothing. Doe testified, "I left his house, and I was texting him, and he was telling me he was sorry. And I told him, I was, like, [yo]u can get in really big trouble for this."

Doe testified that the third incident occurred a few months later at appellant's house. Doe was asleep on appellant's bed but woke up and saw appellant unzipping his pants and exposing his penis. Appellant then touched Doe's penis with his hands and put the penis in appellant's mouth. Doe testified that he tried to act as if he was asleep because he did not know if appellant would hurt him. Appellant then stopped touching Doe, and Doe "turned over to the side, acted like [he] was still sleeping, zipped [his] pants back up, and went to sleep."

Complainant John Smith testified that appellant had touched his "private parts" once when he slept over at appellant's house in 2014. Smith testified that he was 15 years old at the time. He stated, "[W]hen I went to sleep that night, like, I was just woken up by, like, a hand trying to, like, creep to my private parts, and I wasn't too sure, like, what it was. And it was like when I—when I woke up and I saw him, I didn't know what to do. I just kind of rolled over and everything and that's about it because he was my friend and I wasn't too sure what was happening." Smith stated that appellant touched his penis over his clothing but did not touch his skin.

The jury also heard a recording of a telephone call between appellant and Smith. Doe and Jenkins, together with Jenkins's brother and a friend, listened to the telephone conversation on speaker phone and taped it. The recording is inaudible at times but the jury could hear that appellant admitted to putting Doe's penis in his mouth. In response to Smith's question: "Did you actually suck [Doe's] dick," appellant said: "I did it. . . . It was wrong of me to do that."

Further, when Smith told appellant during the telephone conversation, "you did more than hurt me, you kind of molested me," appellant responded, "I don't see it that way but I could put it that way now that you said it." Appellant also apologized to Smith saying, "I'm sorry I hurt you . . . I wish I could go back." When Smith asked appellant "why did you do this to all of us," appellant responded, "I told you already."

After hearing the evidence presented by the State and appellant, a jury found appellant guilty in all three causes. The trial court sentenced appellant to 15 years' confinement for the offense of sexual assault

of a child; eight years' confinement for the offense of indecency with a child; and 28 years' confinement for the offense of continuous sexual abuse of a child. Appellant timely appealed.

## ANALYSIS

### I. Notice

Appellant argues in his first issue that the trial court "erred in allowing the State, during guilt-innocence and punishment, to introduce evidence of five extraneous acts, contrary to Tex. R. Evid. 404(b) and Tex. Code Crim. Proc. 38.37." Appellant more specifically argues that the State should not have been allowed to introduce evidence of five extraneous offenses because the State failed to give appellant proper notice pursuant to Texas Rule of Evidence 404(b) and Texas Code of Criminal Procedure Article 38.37.

In the trial court, appellant argued only that the State should not be allowed to introduce extraneous offense evidence because it failed to give appellant notice under Article 38.37 of all the extraneous offenses it intended to introduce at trial. Appellant did not object in the trial court to the admission of extraneous offense evidence because the State failed to provide him with proper notice under Rule 404(b). Accordingly, appellant failed to preserve his Rule 404(b) notice argument for appellate review.[6] *See* Tex. R. App. P. 33.1(a); *see also Saldivar v. State*, 980 S.W.2d 475, 492–93 (Tex. App.–Houston [14th Dist.] 1998, pet. ref'd).

■ We now turn to appellant's argument that the trial court erroneously allowed the State to introduce evidence of extraneous offenses during the guilt-inno-

---

**6.** Even if appellant had preserved his Rule 404(b) notice argument, our analysis of that

argument would not differ from our analysis of appellant's Article 38.37 notice argument.

cence phase of the trial without providing notice pursuant to Article 38.37.

██ We review a trial court's decision to admit or exclude evidence for abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court abuses its discretion only if its decision is so clearly wrong as to lie outside the zone within which reasonable people might disagree. *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).

██ Article 38.37, entitled "Evidence of extraneous offenses or acts," is an evidentiary rule applicable to certain types of sexual abuse cases including sexual assault of a child, indecency with a child, and continuous sexual abuse of a child. *See* Tex. Code Crim. Proc. Ann. art. 38.37 (Vernon Supp. 2016); *Hitt v. State*, 53 S.W.3d 697, 705 (Tex. App.–Austin 2001, pet. ref'd). It supersedes application of Rule 404(b), making admissible extraneous offense evidence that Rule 404(b) does not. *See* Tex. Code Crim. Proc. Ann. art. 38.37 §§ 1(b), 2(b); *Hitt*, 53 S.W.3d at 705.

Article 38.37 allows the jury to consider that evidence's bearing on "relevant matters," including the state of mind of the defendant and the child, the previous and subsequent relationship between the defendant and the child, and the character of the defendant and acts performed in conformity with the character of the defendant. *See* Tex. Code Crim. Proc. Ann. art. 38.37 §§ 1(b), 2(b).

Under Article 38.37, the State must give a defendant, at least 30 days before trial, notice of its intention to introduce evidence of other offenses the defendant committed as described in Section 2, including sexual assault of a child, indecency with a child, and continuous sexual abuse of a child. Tex. Code Crim. Proc. Ann. art. 38.37 §§ 2(b), 3.

Here, the State filed a notice entitled "State's Intent to Introduce Extraneous Offenses/Bad Acts" on March 10, 2015, for cause numbers 14CR2148, 14CR2149, and 14CR2150. The notice stated in pertinent part: "In accordance with Rule 404 (b), Tex. R. Evid., Rule 609 (f), Tex. R. Evid., Article 38.37 Code of Crim. P. and Article 37.07, Section 3 (g) Code of Crim. P., the State herein makes known its intent to introduce the following extraneous offense(s) in the trial of the above styled and number cause." The notice then listed, among others, the extraneous offenses, corresponding cause numbers as applicable, and the complainants' names:

- Aggravated sexual assault of a child, 14CR2148, John Jenkins (a pseudonym)
- Indecency by contact, 14CR2149, John Smith (a pseudonym)
- Continuous sexual abuse, 14CR2150, John Doe (a pseudonym)
- Indecency by exposure, John Jenkins (a pseudonym)—in brackets, the notice also stated: "[Exposed self and masturbated in front of John Smith (a pseudonym) and John Davis (a pseudonym) ]"

The State sent an email entitled "Brady Disclosure" to appellant on April 1, 2015. The email stated:

This email is intended be a formal Brady Disclosure regarding the cases against [appellant]. If you don't mind could you please send a reply letting me know that you received this.

On March 26th at approximately 4:00pm I interviewed [Jenkins] in my office. I asked him if everything that he stated in his CAC interview was accurate or if there was anything he needed to correct, or if there was any other information that he had that he did not disclose during his interview. He stated that during his interview he thinks he only

talked about two times that [appellant] did something sexual to him, when in fact it happened 5 times. He stated that he thinks the incidents that he talked about during his CAC interview were the first and last times that something happened. I asked him why he did not tell them about all of the incidents and he stated because he was scared.

The State described in the email the five incidents of sexual abuse Jenkins claimed appellant had committed. After receiving the State's email, appellant filed an unopposed motion for continuance on April 7, 2015, which stated in pertinent part:

> On the afternoon of Wednesday, April 1, 2015, the prosecutor emailed Defense counsel a "Brady Disclosure" stating that on March 26, 2015 he met with John Jenkins (pseudonym), the alleged victim in 14CR2148, and provided alleged new allegations that were not previously disclosed in the teenager's Child Advocacy Center ("CAC") video and that were not previously provided to Defense counsel in discovery. These "new" allegations are substantially different in time, place (jurisdiction) and manner from the story given by the teenager in teenager's CAC video. In order to adequately represent Defendant, defense counsel needs additional time to investigate the facts and circumstances surrounding these new matters and to prepare a proper defense.

At trial, appellant argued that the trial court should not allow the State to introduce evidence of all five incidents of sexual abuse because the "Brady Disclosure" email does not constitute proper notice of the State's intent to introduce evidence of all incidents under Article 38.37. Appellant acknowledged that he had been given notice of two incidents of sexual abuse in the State's March 10, 2015 notice entitled "State's Intent to Introduce Extraneous Offenses/Bad Acts."

In response to appellant's argument, the trial court stated: "And you were given notice of—the State gave you notice that they gave you a video which indicated, I guess, two incidents, and then they were saying, [w]e've come to believe or we have information or at least this witness has said that there were other incidents and these are them, and it's not on the video. So you can either use that at—for his cross-examination or whatever you wanted to use, but I think that—I think that notice complies with the statute." The trial court ruled that "there has been substantial compliance, and there is no surprise. And the Court is going to allow testimony of extraneous [sic] on the additional three extraneous offenses in addition to the two that he was originally going to testify to."

Appellant contends on appeal that the trial court erroneously allowed Jenkins to testify regarding all five incidents of sexual abuse because the State failed to comply with the notice requirement in Article 38.37 when it did not provide notice of its intent to introduce all five incidents of sexual abuse appellant committed against Jenkins during the guilt-innocence phase of the trial.

We need not decide whether the trial court erred in admitting the evidence because, assuming without deciding that the trial court erred, any error is harmless. Appellant's argument regarding how he was harmed by the lack of notice consists of the following statement: "In the case at bar, I do not see how it could be argued that allowing the jury to hear four additional sexual offenses when appellant was on trial for sex offenses, did not have a 'substantial[ly] injurious effect or influence[d] the jury's verdict.'"

 Error in admitting evidence in violation of the notice provision of Article

38.37 is non-constitutional error. *Villarreal v. State*, 470 S.W.3d 168, 176–77 (Tex. App.—Austin 2015, no pet.) (concluding that any error in the admission of evidence in violation of Article 38.37's notice provision constitutes non-constitutional error); *see McDonald v. State*, 179 S.W.3d 571, 578 (Tex. Crim. App. 2005) ("Because no constitutional error is involved when evidence of uncharged misconduct is admitted without notice, we look to Texas Rule of Appellate Procedure 44.2(b)."); *Hernandez v. State*, 176 S.W.3d 821, 824–25 (Tex. Crim. App. 2005) (error in the admission of evidence in violation of the notice requirement of Rule 404(b) constitutes non-constitutional error). Thus, we will not conclude an error is harmful unless it had a substantial and injurious effect or influence in determining the jury's verdict. *See Hernandez*, 176 S.W.3d at 824–25; *Villarreal*, 470 S.W.3d at 176–77. Because the purpose of the Article 38.37 notice provision is to enable the defendant to meet the evidence of extraneous offenses, we consider whether the lack of notice surprised the defendant or adversely affected his ability to mount an effective defense. *See Villarreal*, 470 S.W.3d at 176 ("The purpose of requiring the State to provide notice regarding its intent to use evidence of other crimes is to prevent the defense from being surprised, ... and to allow the 'defendant adequate time to prepare for the State's introduction of the extraneous offenses at trial ....' "); *see also Hernandez*, 176 S.W.3d at 825–26.

Here, appellant admitted he was aware of the additional three incidents of sexual abuse Jenkins had alleged; appellant protested only that he was unaware the State planned to introduce such evidence during appellant's trial. If re-evaluation of trial strategy was required, appellant could have requested a continuance. Appellant did not ask for a continuance of the trial and did not point out—either in the trial court or in his appellate brief—how his trial strategy would have been different if he had been provided notice.

Based on the record before us, we cannot conclude appellant was harmed by the alleged lack of notice under Article 38.37. *See McDonald*, 179 S.W.3d at 578–79; *Hernandez*, 176 S.W.3d at 825–26. Appellant made no other objection to the admissibility of the extraneous offence evidence.

■ We next address appellant's contention that the trial court erred by allowing Jenkins's brother to testify during the punishment phase of trial that "when he was 8 or 9 years old he was at [appellant]'s house and [appellant] was masturbating while watching pornography." Appellant contends that the State failed to provide notice of its intent to introduce evidence of this extraneous offense.

Here, the State's March 10, 2015 notice listed indecency by exposure as one of the extraneous offenses the State intended to introduce at trial; the notice named John Jenkins as the complainant and stated that the offense occurred on or about June 13, 2014, in Galveston county. In brackets, the notice also stated: "[Exposed self and masturbated in front of John Smith (a pseudonym) and John Davis (a pseudonym)]." John Davis was the pseudonym for Jenkins's brother.

At trial, appellant objected to the State introducing Jenkins's brother's testimony, arguing: "Under 37.07 it requires that the notice comply with the requirements of Rule 404(b), and it required that the notice included the date on which—the day on which—the county in which the alleged crime or bad act occurred and the name of the alleged victim of the crime of that act.... It is defective. It does not provide any date." The trial court overruled appellant's objection and stated, "And I'm looking at the State's intent to introduce extra-

neous offense, bad acts; and [the] Court finds sufficient notice has been given."

Appellant limits his argument on appeal to the following statements: "Appellant objected to this extraneous offense stating that he did not receive any notice regarding this extraneous offense. It is undisputed, that nowhere in the record did the [S]tate provide to appellant, his [sic] intent to offer this extraneous offense."

Assuming without deciding that the trial court erroneously admitted the complained-of testimony, we conclude that any error is harmless. Appellant was not surprised by the extraneous offence evidence. He did not ask for a continuance and did not point out in the trial court or on appeal how his defense strategy might have been different had the State's notice not been "defective" or had it been clearer regarding the extraneous offense evidence. On appeal, appellant does not assert that he was harmed by the trial court's allegedly erroneous admission of testimony. Based on the record before us, we cannot conclude that appellant was harmed by the allegedly erroneous admission of extraneous offense evidence. *See McDonald*, 179 S.W.3d at 578–79; *Hernandez*, 176 S.W.3d at 825–26.

Accordingly, we overrule appellant's first issue.

## II. Consolidation

■ Appellant contends in his second issue that the trial court erroneously consolidated "all three cases for trial" when he "objected on the basis that it would affect his Voir Dire, dispense with his [Article] 38.37 hearing and prejudice his defense."

Section 3.02 of the Texas Penal Code permits the consolidation of separate criminal charges against a single defendant that arise out of a single criminal episode.

Tex. Penal Code Ann. § 3.02 (Vernon 2011); *Werner v. State*, 412 S.W.3d 542, 546 (Tex. Crim. App. 2013). "Separate offenses are part of a 'single criminal episode' if (1) the offenses are committed pursuant to the same transaction (a single crime spree) or more than one transaction if they are connected by a 'common scheme or plan'; or (2) 'the offenses are the repeated commission of the same or similar offenses.' " *Werner*, 412 S.W.3d at 546 (quoting Tex. Penal Code Ann. § 3.01 (Vernon 2011)).

■ "Allowing the State to prosecute connected or related charges in a single criminal action, as authorized by Section 3.02, furthers 'convenience and efficiency' by curtailing 'piecemeal litigation[,] . . . the antithesis of judicial economy.' " *Id.* (quoting *Haliburton v. State*, 578 S.W.2d 726, 729 (Tex. Crim. App. 1979) and *Ex parte Howard*, 685 S.W.2d 672, 674 (Tex. Crim. App. 1985) (Teague, J., concurring and dissenting)). "Although the statute's primary purpose is to streamline the judicial process, consolidation also benefits criminal defendants by requiring concurrent sentencing in most instances." *Id.*

On the other hand, Section 3.04(a) grants defendants a right to sever most charges that have been consolidated under Section 3.02. *Id.* (citing Tex. Penal Code Ann. § 3.04(a) (Vernon 2011)); *Lane v. State*, 174 S.W.3d 376, 380 (Tex. App.— Houston [14th Dist.] 2005, pet. ref'd). A defendant's right to severance is limited by Section 3.04(c). *Lane*, 174 S.W.3d at 380; *Salazar v. State*, 127 S.W.3d 355, 364 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). Section 3.04(c) provides that a defendant's right to severance does not apply to offenses joined pursuant to section 3.03(b)(2), including sexual assault of a child, indecency with a child, and continuous sexual abuse of a child, unless the court determines the defendant or the

State would be unfairly prejudiced by the joinder. Tex. Penal Code Ann. § 3.04(c) (Vernon 2011); *see* Tex. Penal Code Ann. § 3.03(b)(2) (Vernon Supp. 2016).

 For these types of offenses, there is no presumption that the joinder of cases with different child victims is unfairly prejudicial; a defendant bears the burden of showing how he would be unfairly prejudiced by consolidation. *See Hodge v. State*, Nos. 03–15–00418–CR & 03–15–00419–CR, 500 S.W.3d 612, 620–21, 2016 WL 4179116, at *6 (Tex. App.—Austin Aug. 4, 2016, no pet.).

Appellant objected in the trial court to consolidating the three causes brought against him, arguing that he "would be unduly prejudiced in this case if these cases are consolidated because it would force [appellant] to divide up his defenses between the three indictments." Appellant stated, "[i]t is different trial strategy, different issues coming up, different defenses, you know, the ability to be able to divide up defenses pursuant to each particular indictment. ... Additionally, Judge, it affects the Defense's strategy on voir dire preparations, on voir diring the jury, whether we're voir diring on one case or three cases." Appellant also argued that consolidation of the three causes would be improper because the State's Article 38.37 notice of intent to introduce testimony from Jenkins regarding five extraneous offenses was defective.

On appeal, appellant claims that the trial court erroneously consolidated all three causes for trial when he "objected on the basis that it would affect his Voir Dire, dispense with his [Article] 38.37 hearing and prejudice his defense." However, appellant fails to explain how consolidation of the three charges caused him unfair prejudice. He does not explain how his trial strategy would have been different; how voir dire was affected; or how his defense

would have been different. And the record shows that the trial court held a hearing as required by Article 38.37 before admitting Jenkins's extraneous offense testimony; therefore, contrary to appellant's assertion, consolidation did not "dispense with his [Article] 38.37 hearing."

Appellant's argument is limited to the following contention in his brief: "The [S]tate's argument in favor of consolidation was for judicial economy and also that that [sic] the jury would hear about the other pending cases anyway due to § 38.87(2)(b). However, appellant's argument was that due to the [S]tate's defective notice (i.e., the Brady email) that the jury should not hear any extraneous offenses. (see Issue # 1). It is conceivable that appellant would not have been convicted for either offense had he been granted his request for separate trials."

To the extent appellant asserts that he was unfairly prejudiced by the consolidation because the State's Brady email (discussed in issue one) did not constitute effective notice of the State's intent to introduce Jenkins's testimony regarding three instances of sexual abuse in addition to two previously and properly noticed instances of sexual abuse, the alleged "defective notice" alone cannot support a claim of unfair prejudice.

First, any allegedly defective notice would affect only admissibility of Jenkins's testimony regarding the later-disclosed additional three instances of sexual abuse; it would not preclude introduction of Jenkins's testimony regarding the two instances of sexual abuse the State properly noticed pursuant to Article 38.37 in its March 10, 2015 notice entitled "State's Intent to Introduce Extraneous Offenses/Bad Acts." *See* Tex. Code Crim. Proc. Ann. art. 38.37 § 2(b). Thus, the jury could still hear Jen-

kins's testimony regarding two instances of sexual abuse appellant committed.

Second, appellant's "defective notice" argument extends only to Jenkins's extraneous offense testimony about three additional instances of sexual abuse. Appellant does not argue that the State provided "defective notice" and thus could not introduce at trial evidence of offenses for which he was indicted. Nor would such an argument have merit if appellant had made it. Appellant was indicted in three causes for sexual assault of a child, indecency with a child, and continuous sexual abuse of a child. Even if appellant was tried for each of these indicted offenses separately, in a trial of any of these three offenses, evidence of the other two indicted offenses would be admissible under Article 38.37. This provision allows admission of "evidence that the defendant has committed a separate offense [including the three offenses for which appellant was indicted—sexual assault of a child, indecency with a child, and continuous sexual abuse of a child] ... for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." *See id.* Thus, even if the trial court had not consolidated the three causes, evidence of the different offenses appellant was indicted for would have been admissible in each cause; and Jenkins, Smith, and Doe could testify in each separate cause and a jury would hear evidence of all three indicted offenses under Article 38.37 regardless of whether the offenses were tried together or in separate trials. *See Hodge,* 500 S.W.3d at 623, 2016 WL 4179116, at *8.

Further, appellant acknowledges that the recorded telephone conversation between appellant and Smith, during which appellant acknowledged sexually abusing all three complainants, constitutes over-lapping evidence which would have been admissible in each cause. A jury would have heard the recording whether appellant was tried for sexual assault of a child, indecency with a child, and continuous sexual abuse of a child in separate trials or in one trial.

Accordingly, we conclude that the trial court reasonably could have determined that consolidation was not unfairly prejudicial against appellant; therefore, the trial court acted within its discretion in trying the three causes together. *See Salazar,* 127 S.W.3d at 365–66. We overrule appellant's second issue.

## CONCLUSION

We affirm the trial court's judgment.