In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-18-00252-CR
_____

**JAMES MONROE FOSTER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 75th District Court**
**Liberty County, Texas**
**Trial Cause No. CR31642**

## MEMORANDUM OPINION

A grand jury indicted Appellant James Monroe Foster for continuous sexual abuse of a child, a first-degree felony. *See* Tex. Penal Code Ann. § 21.02 (West 2019).[1] A jury found Foster guilty and assessed punishment at ninety-nine years in

---

[1] We cite current versions of statutes because amendments after Foster's offense do not affect our disposition.

1

prison. In a single issue, Foster appeals his conviction, challenging the admission of extraneous-offense evidence. We affirm the trial court's judgment.

<u>Background and Evidence at Trial</u>

The grand jury indicted Foster in March 2015, alleging[2] that Foster:

> . . . during a period that was 30 or more days in duration, to-wit: from on or about the 1st day of September, 2007 through the 1st day of January, 2014, when the defendant was 17 years of age or older, commit two or more acts of sexual abuse against a child younger than 14 years of age, namely, including but not limited to: intentionally and knowingly cause [] contact and/or penetration of the mouth of [Alice], a child who was then and there younger than 14 years of age, by the defendant's sexual organ; and/or intentionally and knowingly cause contact and/or penetration of the sexual organ of [Alice], a child who was then and there younger than 14 years of age, by defendant's sexual organ and/or intentionally and knowingly cause contact and/or penetration of the sexual organ of [Alice], a child who was then and there younger than 14 years of age, by defendant's mouth; and/or with the intent to arouse or gratify the sexual desire of said defendant, engage in sexual contact with [Alice] by touching the genitals of [Alice], a child younger than 17 years of age; and/or with the intent to arouse or gratify the sexual desire of said defendant, cause [Alice], a child younger than 17 years of age, to engage in sexual contact by causing the said [Alice] to touch the genitals of the defendant[.]

Foster pleaded "not guilty."

---

[2] We identify the victim and her family members, except the Defendant, with pseudonyms. *See* Tex. Const. art. I, § 30(a)(1) (granting victims of crimes "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

2

<u>Testimony of Alice</u>

Alice reported that she was sixteen years old at the time of trial and she had three biological sisters: Alicia, Jessie, and Allison. Alice testified that Foster and his wife were her biological parents, but that their parental rights were terminated and Alice was adopted by another family in 2016.

Alice recalled that the first time Foster did something to her, she was in the fourth grade and she was eight or nine years old. According to Alice, Foster put his fingers in her vagina and he had sexual intercourse with her. Alice was scared and thought Foster would hit her because he had hit Alicia, her older sister, before. Alice recalled that Foster did the same things to her when she was about ten years old. Alice also testified that when she was about eleven years old, she was in her biological parents' bedroom with the door closed, Foster pulled out a dildo and inserted it into her vagina, and he then also had sexual intercourse with her. Alice recalled another time when she was younger than fourteen that Foster penetrated her and had sexual intercourse with her. According to Alice, another time Foster picked her up after she had taken a shower, pulled down her underwear, and penetrated her vagina with his tongue, and Alice testified this occurred twice. Alice described another incident when she was about eleven years old when Foster called her into his bedroom after she had showered and he penetrated her and had sexual intercourse

3

with her. Alice recalled another time when she was eleven years old and about a week before CPS removed the children from the home when Foster asked her to use her hands to rub his sex organ and to perform oral sex on him. Alice agreed that these incidents did not all occur within a thirty-day period.

According to Alice, she did not tell anyone about these incidents because she was afraid of Foster. After CPS removed her from Foster's home, she did not tell anyone because she was afraid of being sent back to her biological parents' house. When asked why she and her sisters were removed from their biological parents' home in 2013, Alice responded that "[t]he house was really disgusting. There was poop and pee from dogs all over the place. There were dirty dishes in the sink[;]" the toilets did not work; there were holes in the floor; there was no running water; there was no air conditioning except in her biological parents' room; and the house was infested with insects, rats, and snakes. Alice recalled that after being removed by CPS, she was sent back to live with Foster at least twice.

Alice testified that after she was placed in the Boys and Girls Harbor, a residence for children taken into CPS custody, she eventually told her counselor Ms. Johnson about the sexual abuse by Foster because Ms. Johnson was the first person Alice trusted. Alice agreed she later had an examination by a sexual assault nurse examiner (SANE), and she also told the nurse about the incidents of abuse by Foster.

4

<u>Testimony of Alicia</u>

Alicia, who was eighteen years old at the time of trial, testified that Foster and his wife are her biological parents, but she now lives with her adoptive parents. Alicia is older than her three biological sisters, Jessie, Alice, and Allison. She explained that she and her sisters were taken from the home of their biological parents in August 2013, when she was thirteen years old, Alice was twelve years old, Jessie was ten years old, and Allison was about eight years old. According to Alicia, the children were taken out of the home because conditions "were deplorable. There [were] rat feces, animal feces, clothes. It was just a mess everywhere[,]" furniture was falling apart, and the house had holes in the floor and was infested with insects.

Alicia testified that Foster assaulted her sexually and physically, that he sexually assaulted her from the time she was about four years old until she was about eleven years old and could start fighting back. According to Alicia, Foster penetrated her vagina with his penis and he also touched her "in her underwear[,]" on her chest, and on her "behind." Alicia testified that penetration occurred "[a]t least three times[]" and that the touching occurred more than five times. Alicia also testified that Foster took photographs of her taking a shower or bath when she was about twelve or thirteen years old, and he forced her to watch pornographic videos two or

5

three times. Alicia also testified that she thought Foster was doing the same thing to Alice because he would take Alice into a room alone and that when she walked in on them one time, she believed Foster was performing oral sex on Alice.

According to Alicia, Foster had "smacked [her] in the face[]" and "punched [her] in the nose[,]" which made her scared that she might get hurt if she resisted Foster. Alicia testified that she told her biological mother what had happened to her, but her mother "laughed it off" and Alicia never told anyone else. Alicia thought about running away many times but stayed to try to protect her sisters. Alicia explained that she did not tell CPS about the abuse because she was afraid she would have to go back to her biological parents and that Foster would hit her or her sisters.

Testimony of Jessie

Jessie, who was fifteen years old at the time of trial, testified that she was in the process of being adopted but that Foster and his wife are her biological parents. Jessie testified that she and her sisters were taken from the Fosters by CPS in August 2013 because the house was "unlivable[,]" and "there was trash all over the floors, holes in the walls, [and] rats in the house." Jessie recalled walking into the bedroom once when Foster was naked and "was on top of [Alice,]" and Jessie thought he was hurting Alice because Alice was crying. According to Jessie, she saw Foster on top

of Alice like that "multiple times." Jessie testified that one-time Foster pulled her into the bedroom and tried to rape her, but she hit him with a bat.

Testimony of Evelyn Stull-Armour

Evelyn Stull-Armour, a psychologist who had worked as an investigative case worker for CPS, testified that while working for CPS, she was called twice about Foster and his wife. The first case was for alleged neglect, and Stull-Armour testified that the house was by "far the worst that [she had] ever seen[]" because of the "stench[]"; piles of garbage, clothes, and debris on the floor and countertops; holes in the floor; and roaches. Stull-Armour testified that, upon seeing the conditions in the home, she obtained permission for an emergency removal of the children. According to Stull-Armour, there were no allegations of sexual abuse in the first CPS case.

In May 2014, Stull-Armour became involved in a second CPS case in which Alice had made an allegation of sexual abuse to her counselor at the Boys and Girls Harbor and the counselor then notified CPS. Stull-Armour felt that Alice had finally opened up and talked about the sexual abuse once she knew she did not have to go back to the Fosters' home and was in the adoption process.

Testimony of Carole Karachiwala

Carole Karachiwala testified that she was a conservator for CPS and that in August 2013, she was assigned a case from investigator Stull-Armour involving the four sisters in the Foster family. At first all four girls were placed with a relative, but the relative called CPS and asked for removal because "[s]he could no longer deal with the parents showing up and demanding to come into the home to visit with the children." According to Karachiwala, ultimately all four of the girls were removed, and the parents' rights were terminated.

Testimony of Tamara Johnson

Tamara Johnson testified that she works as a private therapist and also provides services for the Boys and Girls Harbor. Johnson testified that she treated Alice at least twice a month at Boys and Girls Harbor after Alice was placed there by CPS in 2013. According to Johnson, Alice was younger than fourteen years of age when Johnson treated her. Johnson testified that Alice told her she was forced to have sex with her biological father and that he would penetrate her vagina with his penis and with a sex toy, and that this happened for about two years. Johnson also testified that Alice told her the sex abuse stopped when CPS removed her from the home. Johnson testified that she notified CPS of Alice's outcry.

<u>Testimony of Niya Graves</u>

Niya Graves, who works as a hospital SANE, testified that she conducted a sexual assault examination on Alice in June 2014 and Graves's report on the examination was admitted into evidence. Graves testified that Alice told her that James Foster, her biological father, tried to penetrate her sexual organ with his penis and Foster also asked Alice and her sister Alicia to perform oral sex on him. Graves also testified that Alice told her she went to a new home because of the abuse and because the Foster home was dirty, and that her mother knew what happened but did not do anything. According to Graves, Alice had some injuries on her body, but Alice did not attribute those injuries to sexual abuse. Graves testified that she found no visible injuries to the female genitalia of Alice. Graves explained to the jury that just because she sees no tear or visible injury does not mean the victim was not sexually abused, and the lack of physical injury "has no bearing on whether the sexual assault actually occurred" because the female sexual organ is made to heal itself.

Issue

In a single issue, Foster argues that the trial court erred in admitting Alicia's testimony under article 38.37 because the State provided only three days' notice of its intent to use the testimony. According to Foster, although the State had given

9

notice of its intent to use Alicia's testimony at trial about two years before trial, the State did not provide notice of the substance of her testimony until three days before trial.

Foster also argues that "judging whether proper notice would have changed his defense strategy puts the cart before the horse." Foster argues that he was harmed by the State's failure to provide thirty days' notice as required by article 38.37 because the lack of notice "probably affected his defense strategy[.]" According to Foster, he did not have time to prepare for Alicia's testimony, and with more time, he "might have found" evidence to find an "alibi" or "impeach" Alicia. Foster contends that the admission of Alicia's testimony bolstered Alice's testimony, for which he had no time to prepare a defensive or impeachment strategy.

The State argues that it disclosed to the defense as soon as it learned that Alicia was available to testify and that defense counsel did not request a continuance. According to the State, it was within the trial court's discretion to determine that three days' notice was adequate and to admit Alicia's testimony at trial.

<u>Standard of Review</u>

We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). The test for abuse of discretion is whether the court acted without

reference to any guiding rules or principles, and the mere fact that a trial court may decide a matter within its discretionary authority differently than an appellate court does not demonstrate such an abuse. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). We will not reverse a trial court's ruling on the admission of evidence if the ruling is within the zone of reasonable disagreement. *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).

Applicable Law

Texas Rule of Evidence 404(b) provides that evidence of extraneous offenses is generally not admissible. Under article 38.37 of the Code of Criminal Procedure, a statutory exception exists when the defendant is charged with certain sexual offenses, including continuous sexual abuse of a child. *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2 (West 2018). Under this statutory exception, evidence that the defendant has committed a separate sex offense (specifically listed by the statute) may be admitted at trial for its relevance to any matter, including the character of the defendant and acts performed in conformity therewith. *Id.* § 2(b).

Article 38.37 also provides that "[t]he state shall give the defendant notice of the state's intent to introduce in the case in chief evidence described by Section 1 or 2 not later than the 30th day before the date of the defendant's trial." *Id.* § 3. The purpose of this notice requirement is to prevent surprise and inform the defendant of

11

the extraneous offenses or acts the State plans to introduce at trial in order to mount an effective defense. *Lara v. State*, 513 S.W.3d 135, 143 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *Price v. State*, 245 S.W.3d 532, 539 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Because the purpose of the article 38.37 notice provision is to enable the defendant to prepare a defense to the extraneous offenses, we consider whether the lack of notice surprised the defendant or adversely affected his ability to mount an effective defense. *See Lara*, 513 S.W.3d at 143 (citing *Villarreal v. State*, 470 S.W.3d 168, 176 (Tex. App.—Austin 2015, no pet.)); *Martin v. State*, 176 S.W.3d 887, 900 (Tex. App.—Fort Worth 2005, no pet.); *cf. Hernandez v. State*, 176 S.W.3d 821, 824-25 (Tex. Crim. App. 2005) (discussing the purpose of the notice requirement under Rule 404(b)); *Roethel v. State*, 80 S.W.3d 276, (Tex. App.—Austin 2002, no pet.) (discussing the purpose of the notice requirement under article 37.07). Reasonableness of notice is determined by all the facts and circumstances of the case. *See Francis v. State*, 445 S.W.3d 307, 318 (Tex. App.—Houston [1st Dist.] 2013), *aff'd*, 428 S.W.3d 850 (Tex. Crim. App. 2014); *Martin*, 176 S.W.3d at 900; *Sebalt v. State*, 28 S.W.3d 819, 822 (Tex. App.—Corpus Christi 2000, no pet.).

The erroneous admission of evidence in violation of the notice provision of article 38.37 is reviewed under the standard for non-constitutional error. *See* Tex. R. App. P. 44.2(b); *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011);

12

*Taylor*, 268 S.W.3d at 592; *Lara*, 513 S.W.3d at 142-43 (citing *Villarreal*, 470 S.W.3d at 176-77); *see also Hernandez*, 176 S.W.3d at 824-25 (error in the admission of evidence in violation of the notice requirement of rule 404(b) is non-constitutional error); *Woods v. State*, 152 S.W.3d 105, 118 (Tex. Crim. App. 2004) (en banc) (addressing erroneous admission of evidence under article 38.22). Rule 44.2(b) provides that "[a]ny other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Tex. R. App. P. 44.2(b). A substantial right is affected when the error has a substantial and injurious effect or influence in determining the jury's verdict. *Rich v. State*, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005) (quoting *Russell v. State*, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005)); *Petriciolet v. State*, 442 S.W.3d 643, 653 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). An appellate court "'will not overturn a criminal conviction for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or influenced the jury only slightly.'" *Barshaw*, 342 S.W.3d at 93 (quoting *Schutz v. State*, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001)). In considering the potential to harm, the focus is not on whether the outcome of the trial was proper despite the error, but whether the error had a substantial or injurious effect or influence on the jury's verdict. *Id.* at 93-94 (citing *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000)). A

conviction must be reversed for non-constitutional error if the reviewing court has grave doubt that the result of the trial was free from the substantial effect of the error. *Id.* at 94 (citing *Burnett v. State*, 88 S.W.3d 633, 637 (Tex. Crim. App. 2002)). "Grave doubt" means that "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *Id.* at 94 (citing *Burnett*, 88 S.W.3d at 637-38).

In considering whether the trial court's error in admitting extraneous offense evidence based on the State's failure to provide adequate notice was harmful, we bear in mind the purpose of the notice provisions of article 38.37 and rule 404(b): to avoid surprise and to allow the defendant to mount an effective defense. *See Pena v. State*, 554 S.W.3d 242, 248-49 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd) (citing *Hernandez*, 176 S.W.3d at 825-26; *Lara*, 513 S.W.3d at 143; *Splawn v. State*, 160 S.W.3d 103, 111-12 (Tex. App.—Texarkana 2005, pet. ref'd)). To determine whether an error has resulted in a substantial and injurious effect on the jury's verdict, an appellate court

> . . . must consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. The reviewing court may also consider the jury instruction given by the trial judge, the state's theory, defensive theories, closing arguments, voir dire, and whether the state emphasized the error.

14

*Barshaw*, 342 S.W.3d at 94 (internal citations omitted).

Analysis

Here, on October 28, 2016, the State filed a notice of intent to introduce evidence of other crimes, wrongs, or acts under Rule 404(b) and article 38.37. This notice included allegations of three incidents occurring in September 2007: that Foster had photographed his daughter Alicia in the nude when she exited the shower at their home, and that he twice tried to persuade Alicia to watch pornographic films with him on his computer. Then on June 22, 2018, the State filed an amended notice of intent to introduce evidence of other crimes, wrongs, or acts under Rule 404(b) and article 38.37. In this notice, the State explained that on June 20, 2018, it learned that Alicia had just moved back to Texas and was now available for interview and testimony at trial, and the State notified defense counsel of these developments the same day that the notice was filed. The notice added additional allegations of abuse by Foster against Alicia: that Foster "used his penis to penetrate her vagina" many times from the time she was eight years old until around twelve years old; that he "touched her vagina with his fingers" more than once; that he "put his penis between her feet" on one occasion; and that he "forced her physically to perform oral sex on him[]" and her biological mother walked in and saw what was happening.

On the same day that the State filed its amended notice with more allegations as to Alicia, the defense filed a motion for continuance stating it had not had adequate time to investigate the new "quite serious" allegations and that additional time was necessary to prepare adequately for trial.

The court conducted a hearing outside the jury's presence and determined that the proffered testimony of Alicia about the additional alleged extraneous offenses was adequate to support a finding by the jury beyond a reasonable doubt that Foster committed the separate offenses. The court also explained that it had performed a Rule 403 balancing test and found that the probative value of Alicia's testimony was not substantially outweighed by the danger of prejudice. The trial court noted the defense's objection on the basis of insufficient notice and heard argument, but overruled the objection. The trial court explained:

> I think that these cases and the cases that you referred to, counsel, stand for the proposition that reasonable notice must be determined based on the facts and circumstances of the case.
>
> . . .
>
> The facts and circumstances are that in the court's judgment a 38.37 notice was filed October the 28th of 2016 identifying [Alicia] as a 38.37 witness, but it did not specifically list the extraneous offenses that she has now testified to.
> Furthermore, that the family dynamics obviously is thoroughly disclosed by the 6,000 pages of CPS records that were delivered to counsel for the defense almost a year ago.

16

It's the court's judgment that -- and furthermore that the state -- I accept the state's representation that they first became aware of these extraneous offenses on June the 22nd of this year and immediately notified the defense.

It's the court's position that reasonable notice that's required under 38.37 should be construed within the context of when the state received actual notice of the 38.37 event.

Counsel, your request to exclude this testimony based upon lack of reasonable notice is denied.

At trial, before Alicia's testimony began, the court instructed the jury:

. . . You're about to hear testimony from this witness and this testimony is going to relate to what's called extraneous crimes; that is, crimes other than what's alleged in the indictment or bad acts allegedly committed by the defendant, Mr. Foster.

Before you can consider this evidence for any purpose, you must first find and believe beyond a reasonable doubt that these acts and this conduct occurred[,] and the defendant committed these acts and this conduct or crimes and acts; and then and only then may you consider this evidence for any bearing it may have on matters relevant to the issues in this case including the character of the defendant and acts performed by the defendant in conformity with that type of character.

The record reflects that the State gave notice of intent to call Alicia as a witness in March 2017 and again in August 2017. In October 2016, the State filed a 404(b) and article 38.37 notice of intent to introduce evidence of extraneous offenses, in which it listed seven incidents of sexual conduct by Foster, with conduct against Alice, Alicia, and the other incidents involving other juveniles.

In August 2017, before trial, the State filed notice of receipt of unredacted CPS records and delivery of copies of these records to defense counsel. In a motion

for continuance filed about ten days later, the defense acknowledged receipt of "over 6,000 pages of documents" from CPS involving removal of the four sisters from the Fosters' home.[3] While the appellate record does not reflect that the CPS records were entered into evidence, CPS worker Karachiwala testified that the girls were removed from the Fosters' home in part because of allegations of sexual abuse by Foster against Alice.

The State explained to the trial court that it gave notice of intent to use Alicia's testimony of Foster's sexual abuse of Alicia as soon as it could. According to the prosecutor, the State learned right at the time of trial that Alicia had moved back to Texas with her adoptive family, and that previously Alicia was thought to be unavailable at trial because the adoptive family was living in another state far from Texas. According to the State, "It's not that we waited. It was when we became aware of it we immediately notified defense counsel within hours of getting that notice." Considering all the facts and circumstances of this case, we cannot say that the trial court's admission of the testimony is outside the zone of reasonable disagreement. The trial court could have determined that the State's notice was

---

[3] The appellate record includes four motions for continuance by the defense: March 2, 2016; August 17, 2017; January 9, 2018; and June 22, 2018.

18

reasonable under the totality of the circumstances and facts. *See Francis*, 445 S.W.3d at 318.

Assuming without deciding that the State's notice was untimely and that Alicia's testimony was admitted in error, we conclude that Foster has not shown that the alleged error had a substantial and injurious effect or influence in determining the jury's verdict. Alice testified in detail about Foster's sexual abuse. Alice explained to the jury how Foster sexually abused her on numerous occasions from the time when she was about eight years old until she was about eleven years old. The testimony of a child victim (seventeen years of age or younger at the time of the offense) alone is sufficient to support a conviction for indecency with or sexual assault of a child. *See* Tex. Code Crim. Proc. Ann. art. 38.07(b)(1) (West Supp. 2018); *Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978) (aggravated rape of a seventeen year old); *Jones v. State*, 428 S.W.3d 163, 169-70 (Tex. App.— Houston [1st Dist.] 2014, no pet.) (indecency with a child). Therefore, the jury could have found Foster guilty based solely on Alice's testimony.

Alice's sister Jessie also testified that she walked into the bedroom "multiple times[]" and observed Foster naked and on top of Alice. Alice's therapist, Tamara Johnson, testified that Alice made an outcry to her of Foster's sexual abuse. The

SANE also testified that Alice told the SANE during the examination that Foster had sexually abused her.

Additionally, the trial court properly instructed the jury before receiving the complained of testimony. We generally presume that the jury followed the limiting instruction of the trial court. *See Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). The record also reflects that the defense was given an opportunity to cross-examine the witness, and the State had previously timely provided the witness's name as a potential witness relating to other extraneous offenses. The record also shows that the State had provided the defense thousands of pages from the CPS investigation related to the removal of the children from the home and defense counsel admitted the records demonstrated the "dynamics" of the family, even though defense counsel may have denied that the CPS records showed Alicia made the same allegations during the CPS investigation. There is no complaint on appeal that the State placed an emphasis on the testimony from Alicia during the presentation of its case or during closing argument. Rather, Foster argues that he had no time to prepare, that he "might have found evidence with impeachment value against [Alicia] or potential alibi[]s to cast doubt on her allegations[,]" and that Alicia's testimony "had the effect of bolstering" the testimony from Alice. *Cf. Hernandez*, 176 S.W.3d at 824-25 (where State gave copies of defendant's recorded

statements to defense counsel but did not give timely notice under Rule 404(b), Court concluded defendant was in a position to develop evidence to mitigate the impact of the evidence and failed to show his defense was injuriously affected by the failure to give reasonable notice).

After examining the record as a whole, we have fair assurance that the error did not influence the jury or had but a slight effect. The record does not show that a substantial right of Foster's was affected or that any error in admitting Alicia's testimony had a substantial and injurious effect or influence in determining the jury's verdict. *See Rich*, 160 S.W.3d at 577. Accordingly, we overrule Appellant's issue and affirm the trial court's judgment of conviction.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on June 24, 2019
Opinion Delivered July 24, 2019
Do Not Publish

Before Kreger, Horton and Johnson, JJ.