**Affirmed and Memorandum Opinion filed July 19, 2018.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-16-00848-CR

---

### JONATHAN TREVINO, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 174th District Court
Harris County, Texas
Trial Court Cause No. 1470435**

---

## M E M O R A N D U M     O P I N I O N

Appellant Jonathan Trevino appeals his conviction for murder contending that the trial court committed error by (1) making improper comments to the venire panel during voir dire; and (2) admitting improper character evidence of appellant's gang affiliation during the guilt-innocence phase of trial. We affirm.

### BACKGROUND

Appellant was indicted for the murder of complainant, Michael Garza. A jury

trial was held from October 10, 2016, until October 18, 2016.

The evidence at trial showed that complainant lived in a house on Lawson Street in Houston, Texas, with several people including his wife, Paula; his stepdaughter, Alexis; his three sons, Michael Jr., Abel, and Frank; his niece, Amanda; and Amanda's boyfriend, Marko. Alexis began dating appellant when she was 15 years old. They dated off and on for almost five years. At some point, appellant came to live at complainant's house with Alexis and her family. Complainant and his wife did not initially approve of appellant living in their house, but they came to accept it over time. Appellant and Alexis were parents to a one-year-old daughter, L.T., and expected a second child.

Appellant began working in Louisiana in March of 2015. Appellant came home to Houston on weekends and sometimes stayed at complainant's house with Alexis and L.T. On June 2, 2015, appellant arrived at the house in the evening. Alexis testified that appellant seemed agitated when he arrived at the house. After helping with L.T.'s bath, appellant took L.T. out on the porch. There, appellant drank and smoked with Marko and complainant.

Appellant decided to take L.T. for a walk. Alexis thought appellant might try to take L.T. to a friend's house; she followed appellant and an argument ensued over whether appellant could "take off with" L.T. Appellant stated, "If I want to take off with my daughter, I can. Ain't nobody can tell me nothing." Alexis decided to walk around the block with appellant and L.T. to calm the situation and prevent appellant from "taking off with" L.T.

Complainant, Marko, and complainant's neighbor, Daniel Martinez, sat on the porch and saw Alexis arguing with appellant. They discussed how they could get appellant to leave the house when Alexis and appellant returned because appellant had "a lot of aggression already." Alexis and appellant continued to argue as they walked

2

around the block. Appellant became more agitated and insisted, "If I want to take my daughter, ain't nobody going to tell me anything."

Alexis and appellant returned to the house, and appellant told complainant: "I told y'all I wasn't going to go nowhere with my daughter. And if I want to take her, nobody is going to stop me." After complainant told appellant to "chill out," appellant began arguing with complainant. Alexis testified that appellant flashed his gun or threatened complainant with it during the argument.

Several witnesses including Michael Jr., Marko, Abel, and complainant's neighbor, Paul Martinez, testified that they saw complainant with a machete in his hand by his side during the argument. None saw complainant raise the machete or brandish it towards appellant. Marko testified that complainant grabbed the machete only after appellant threatened him.

Appellant started walking away from the porch and back towards the road. Alexis and complainant turned and started walking back into the house; at that point, appellant ran back toward the porch and shot complainant from the side.

The State called several more witnesses who confirmed Alexis's testimony regarding the events that led to the murder. Rose Marie Rocha and Paul Martinez, complainant's neighbors, both saw appellant walking away from the argument and then run back to the house to shoot complainant. Marko was sitting on the porch during the argument and corroborated most of Alexis's testimony about how the murder occurred. Abel and Michael Jr. testified that complainant was angry but did not waive the machete around, and that complainant was shot as he was walking into the house.

Appellant testified at trial regarding his version of events. Appellant acknowledged firing his gun at complainant but claimed he did so in self-defense. Appellant testified that complainant had the machete in his hand when appellant

returned from his walk with Alexis and L.T. He testified that complainant threatened to "chop him up" and raised the machete towards appellant. Michael Jr. testified that he heard complainant tell appellant that complainant would "chop him" up as the two men exchanged numerous threats.

Appellant testified that he was backing away from the porch but complainant was angry and kept trying to attack him. Appellant testified that, as he was trying to get away, he nearly fell down the steps and complainant swung the machete at him. Appellant testified that this caused him to shoot complainant.

After hearing the evidence presented, the jury found appellant guilty of murder and sentenced appellant to 45 years' confinement. Appellant filed a timely appeal.

## ANALYSIS

### I. Voir Dire

In his first issue, appellant contends that the "trial court erred in explaining the State's burden of proof" to the venire panel. He contends that the trial judge's comments "did not provide an incorrect definition" of the State's burden of proof, but improperly "authorized [each juror] to decide for himself or herself what the [burden of proof] standard is." Appellant points to the following comments:

> Now, in any given case, whether it's a capital murder down to a traffic ticket, the State has the burden of proving each and every allegation by a burden of beyond a reasonable doubt. Now, beyond a reasonable doubt doesn't mean beyond all doubt. It's beyond a reasonable doubt. So who defined the reasonable doubt? Actually, you do because there is no definition and you have to decide what beyond a reasonable doubt actually means. We used to have a definition, but the Court of Criminal Appeals and the Supreme Court has ruled that one out.
>
> So we're here to select members of the jury. Now, that doesn't mean beyond all doubt. And that is what I ask you to remember.

Appellant did not object to the trial judge's comments; he contends the trial judge's

error was fundamental or structural and, therefore, no objection was required to preserve his complaint for review. Appellant also claims that his lack of objection "should not be treated as a complete waiver, since it is the equivalent of a charge error."

The trial judge's comments during voir dire are not equivalent to charge error, and appellant cites no authority to support this contention.

The Court of Criminal Appeals recently has emphasized that there is no common law "fundamental error" exception to the rules of error preservation. *Proenza v. State*, 541 S.W.3d 786, 793-94 (Tex. Crim. App. 2017). The court reiterated that it "had already rejected the idea that 'fundamental error,' as a freestanding doctrine of error-preservation, exists independently from" the categorized approach the court set out in *Marin v. State*, 851 S.W.2d 275 (Tex. Crim. App. 1993). *Id.* at 793.

The court stated as follows regarding fundamental error: "In *Marin*, we described the Texas criminal adjudicatory system as containing error-preservation 'rules of three distinct kinds: (1) absolute requirements and prohibitions; (2) rights of litigants which must be implemented by the system unless expressly waived; and (3) rights of litigants which are to be implemented upon request.'" *Id.* at 792 (quoting *Marin*, 851 S.W.2d at 279). The court "referred to these separate classifications as category-one, -two, and -three *Marin* rights, respectively." *Id.* If an alleged error falls into one of the first two *Marin* categories — if it involves (1) a violation of an absolute systemic requirement, or (2) a violation of a right that is waivable only — it may be raised for the first time on appeal. *See id.* All other complaints involve category three rights that are forfeited unless preserved. *See id.*

In light of *Proenza*, we reject appellant's argument that unpreserved complaints regarding the trial judge's comments on the State's burden of proof during voir dire must be addressed on the merits because the complaint involves "fundamental error." *See id.* at 792-801. Under *Proenza*, there is no freestanding "fundamental error"

exception to the rules of error preservation established by *Marin*.  *See id.* at 793.

Appellant and the State do not address whether appellant's complaint involves a violation of a category one, two, or three right under *Marin*.  Assuming without deciding that appellant's complaint falls within the first or second *Marin* category, we conclude that the trial judge's comments do not constitute error.

Appellant contends that the trial judge committed error because, even though he "did not provide an incorrect definition" of beyond a reasonable doubt, he "invit[ed] up to twelve different incorrect definitions."  Appellant contends that the trial judge's comments "gave the critical concept of proof beyond a reasonable doubt twelve different 'masters,' as each juror was empowered by the judge to decide for himself or herself what the words meant."  According to appellant, a juror could have "decided to apply a preponderance-of-evidence approach" based on the trial judge's comments.

Texas courts are not required to give jurors a definition of proof beyond a reasonable doubt.  *Anderson v. State*, 414 S.W.3d 251, 256 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd); *Carriere v. State*, 84 S.W.3d 753, 758 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd); *see also Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000).

Accordingly, each individual juror must decide what proof beyond a reasonable doubt means and the amount of proof required to meet the beyond a reasonable doubt standard.  *See Fuller v. State*, 363 S.W.3d 583, 587 (Tex. Crim. App. 2012) (jurors should supply their own meaning of the term "beyond a reasonable doubt" based on "their own common-sense understanding of the words"); *Murphy v. State*, 112 S.W.3d 592, 598 (Tex. Crim. App. 2003) (en banc) ("each juror must decide for himself what amount of proof would constitute the threshold of beyond a reasonable doubt"); *Garrett v. State*, 851 S.W.2d 853, 859 (Tex. Crim. App. 1993) ("an individual juror must determine what proof beyond a reasonable doubt means to him, for the law does not

6

tell him"); *Haro v. State*, 371 S.W.3d 262, 265 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) ("Under Texas law . . . each individual juror decides the amount of proof required to meet the threshold of beyond a reasonable doubt."); *Copeland v. State*, No. 14-07-00475-CR, 2008 WL 4735199, at *2 (Tex. App.—Houston [14th Dist.] Oct. 30, 2008, pet ref'd) (mem. op., not designated for publication) ("Texas courts . . . do not provide a definition of reasonable doubt because jurors must determine what proof beyond a reasonable doubt means to them.").

The trial judge correctly explained to the venire panel that "the State has the burden of proving each and every allegation by a burden of beyond a reasonable doubt. Now, beyond a reasonable doubt doesn't mean beyond all doubt. It's beyond a reasonable doubt. [And] because there is no definition . . . you have to decide what beyond a reasonable doubt actually means." *See Fuller*, 363 S.W.3d at 587; *Murphy*, 112 S.W.3d at 598; *Garrett*, 851 S.W.2d at 859; *Copeland*, 2008 WL 4735199, at *2.

Additionally, the trial judge did not err in instructing the venire panel that reasonable doubt "doesn't mean beyond all doubt." *See Fuller*, 363 S.W.3d at 587 ("standard of proof beyond *all* doubt" would be an "inappropriately onerous" standard) (emphasis in the original); *Woods v. State*, 152 S.W.3d 105, 114 (Tex. Crim. App. 2004) (the trial court did not abuse its discretion by instructing the jury that the prosecution is not required "prove guilt beyond all possible doubt"); *Jackson v. State*, 105 S.W.3d 321, 325-26 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (instructing jurors that the State is not required to prove its case beyond all doubt does not constitute error).

With regard to appellant's contention that the trial judge's comments created a risk that the jury would apply a lower burden of proof, like "a preponderance-of-evidence approach," we conclude that no such risk exists based on the particular comments the trial judge made in this case. *See Jackson*, 105 S.W.3d at 326

(instructing jurors that the State is not required to prove guilt beyond all doubt did "not lessen the State's burden of proof, confuse the jury, or negate the statutory burden of proof language"); *Carriere*, 84 S.W.3d at 759 (jury charge defining reasonable doubt as not beyond all doubt did not lessen the burden of proof, or confuse the jury about which standard should be applied); *see also Mays v. State*, 318 S.W.3d 368, 389 (Tex. Crim. App. 2010) (trial judge's instruction that "[i]t is not required that the prosecution prove guilt beyond all possible doubt. It is required that the prosecution's proof excludes all 'reasonable doubt' concerning the defendant's guilt" was not erroneous).

Here, the trial judge correctly instructed the venire members that they must find the defendant guilty beyond a reasonable doubt. The trial judge never suggested that jurors could use a lower burden of proof. The trial judge stated that the "State has the burden of proving each and every allegation by a burden of beyond a reasonable doubt." This is not error. *See Johnson v. State*, 263 S.W.3d 405, 418 (Tex. App.—Waco 2008, pet. ref'd.) (the trial court's statement that beyond a reasonable doubt is "what it means to you" did not "invite the panelists to redefine the standard of proof beyond a reasonable doubt"); *Rogers v. State*, 795 S.W.2d 300, 306 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd) (the trial court's statement that "the bottom line is going to be what beyond a reasonable doubt is to you" was not an erroneous statement; the trial court "was merely telling the jurors to use their common sense"). The trial judge's comments did not lower the State's burden of proof, confuse the venire panel, or invite the venire panel to apply any other standard than beyond a reasonable doubt. *See Jackson*, 105 S.W.3d at 325-26; *Carriere*, 84 S.W.3d at 759.

We conclude that the trial judge's comments regarding the State's burden of proof were not erroneous. Accordingly, we overrule appellant's first issue.

## II.      Admission of Evidence

Appellant contends in his second issue that "[t]he trial court erred in permitting

the State to offer evidence of bad character at the guilt stage of trial which went beyond the evidence admissible under Tex. Code Crim. Proc. art. 38.36(a)." Appellant argues that the trial court erroneously permitted Deputy Squyres, a gang expert, to testify that (1) appellant "appears to have been affiliated" with the "'Five Deuce Hoover Crips'" gang; and (2) "a tattoo indicated [appellant]'s affiliation with [the] 'Folk Nation' [gang]."

During appellant's redirect-examination, his trial counsel elicited testimony that complainant was a member of the Texas Syndicate prison gang. Appellant then concluded his testimony and the State asserted that appellant "made his gang affiliation relevant . . . [a]nd we intend to go into it at this point" during recross-examination. The State questioned appellant regarding his gang affiliation and appellant repeatedly denied being a member of the Houstone Tango Blast prison gang; he also denied having told anyone that he is affiliated with the Houstone Tango Blast gang. But appellant admitted: "[a]s a juvenile, I've been under Five Deuce Crips. That's a street gang."

Thereafter, the defense rested and the State announced that it would call a rebuttal witness in light of appellant's testimony. The next day before the State called a gang expert, Deputy Squyres, as its rebuttal witness, appellant's trial counsel approached the bench and the following exchange occurred:

> [DEFENSE COUNSEL]: All I want to do is — I don't know — if the next witness is a gang expert or graffiti expert, I do want to have a hearing to determine if he's an expert in that field. And second, I also want to have an ongoing objection on the fact that there's more prejudicial than probative to the issues in this case. So I don't know what's coming, I just —
>
> THE COURT: I haven't heard anything yet, you haven't heard anything yet, and all of a sudden we're going to do this?
>
> [DEFENSE COUNSEL]: I don't know whether he's going to call him or not. That's what I'm asking. When he does call him, we need to have a hearing. I'm just telling you.

[THE STATE]:  The next witness is a gang expert.

THE COURT: All right.  You're informed.

[DEFENSE COUNSEL]:  I'm sorry?

THE COURT:  I said you're informed.

[DEFENSE COUNSEL]:  Okay.  Can you give me at least a proffer as to what's going to be offered in front of this jury for you to make a ruling to determine if it is prejudicial, you know, or probative in this case under Rule 404?  You're supposed to conduct a brief hearing to determine if the proffer is good enough to bring in.

THE COURT:  You brought up the issues, so he's got a right to put that witness on to determine whether this is on your facts alone.  So that will be denied.  Let's get him up here.

[DEFENSE COUNSEL]:  Okay.  Good enough

The State called Deputy Squyres, who testified that he is a gang expert and has specialized in gang investigations for 18 years.  He testified that he had looked up appellant in the Gang Tracker database and that appellant is "currently listed in the database as a Five Deuce Hoover Crip."  Appellant did not object to this testimony. Deputy Squyres then testified that there have been "updates to [appellant's] affiliation since he was originally classified as a Five Deuce Hoover Crip."  According to Deputy Squyres, a gang workup was performed on appellant in October 2015.  During the gang workup, appellant self-admitted to being a member of the Houstone Tango Blast prison gang, and a police officer reviewed appellant's social media and appellant's tattoos to confirm his gang membership.  Appellant did not object to this testimony.

After testifying that he was familiar with gang tattoos and their meaning, Deputy Squyres testified that various tattoos appellant had on his body were consistent with Houstone Tango Blast affiliation.  Appellant did not object.  The State then asked about another one of appellant's tattoos:

[THE STATE:]  Now, I'm also showing you State's Exhibit No. 85. What do you see in State's Exhibit No. 85 (indicating)?

10

[DEPUTY SQUYRES:] I see the name, and it appears to be a crown.

[THE STATE:] Is that consistent with any particular gang affiliation?

[DEPUTY SQUYRES:] That type of crown is used by — it's used in Folk Nation gangs.

[THE STATE:] Is it sometimes used — or excuse me. Are crowns sometimes used with the 52 Hoover Crips?

[DEPUTY SQUYRES:] They are.

Appellant did not object.

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010); *Lara v. State*, 513 S.W.3d 135, 141 (Tex. App.—Houston [14th Dist.] 2016, no pet.). A trial court abuses its discretion only if its decision is so clearly wrong as to lie outside the zone within which reasonable people might disagree. *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008); *Lara*, 513 S.W.3d at 141.

To preserve error, a complaining party must make a timely and specific request, objection, or motion and obtain a ruling on that request, objection, or motion. *See* Tex. R. App. 33.1(a); *Lopez v. State*, 253 S.W.3d 680, 684 (Tex. Crim. App. 2008); *Merrit v. State*, 529 S.W.3d 549, 556 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). Moreover, an objection must be made each time allegedly inadmissible evidence is offered unless the complaining party obtains a running objection or obtains a ruling on his complaint in a hearing outside the presence of the jury. *Lopez*, 253 S.W.3d at 684; *Merrit*, 529 S.W.3d at 556.

Assuming for the sake of argument that appellant's objection to Deputy Squyres's testimony was specific enough to apprise the trial court of what testimony to be offered later during trial might be objectionable, we nonetheless conclude that appellant failed to preserve his complaint. Appellant failed to obtain a ruling on a running objection with regard to Deputy Squyres's future testimony, and failed to

11

object when Deputy Squyres testified during trial regarding gang-related matters. Because appellant failed to preserve his complaint for review, we overrule his second issue. *See* Tex. R. App. P. 33.1(a); *Lopez,* 253 S.W.3d at 684; *Merrit,* 529 S.W.3d at 556.

## CONCLUSION

We affirm the trial court's judgment.

/s/     William Boyce
               Justices

Panel consist of Justices Boyce, Jamison and Brown.
Do Not Publish — Tex. R. App. P. 47.2(b).