**Opinion filed December 19, 2019**



## In The

# Eleventh Court of Appeals

_____

## No. 11-17-00343-CR

_____

### CARLOS REFUGIO GARCIA, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 142nd District Court
Midland County, Texas
Trial Court Cause No. CR46409**

### M E M O R A N D U M   O P I N I O N

The jury convicted Appellant, Carlos Refugio Garcia, of indecency with a child by contact, a second-degree felony offense. *See* TEX. PENAL CODE ANN. § 21.11(a)(1), (c)(1), (d) (West 2019). Appellant pleaded "true" to a prior felony conviction alleged by the State for enhancement purposes. The trial court assessed Appellant's punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of life. Appellant brings two issues on

appeal. He challenges the sufficiency of the evidence supporting his conviction, and he contends that the trial court abused its discretion when it admitted, during the guilt/innocence phase, evidence of extraneous offenses. We affirm.

*Background Facts*

C.R. has two children, a boy, A.S., and a girl, L. At the time of the offense, A.S. was seven, and L. was three. C.R. was a work friend of Appellant's wife, Melinda Guerrero. C.R. regularly gave Guerrero rides to and from work, and the two women occasionally went out to lunch together. Through her friendship with Guerrero, C.R. also became acquainted with Appellant.

On the evening of November 21, 2015, Guerrero invited C.R. to Guerrero's and Appellant's home to have dinner and watch a pay-per-view boxing match. C.R., A.S., and L. arrived at the home between 6:00 p.m. and 7:00 p.m. A.S. and L. played in the living room with toys they had brought with them. Appellant sat on the right-hand side of a U-shaped couch in the living room and watched TV while they played. Appellant's sixteen-year-old daughter, M.G., testified that she was also sitting on the couch watching TV.

Shortly after C.R. and her children arrived, C.R. and Guerrero left to run an errand. M.G. testified that C.R. and Guerrero asked M.G. to watch the children while they were gone. When C.R. and Guerrero left, A.S. and L. were still playing on the living room floor, and Appellant and M.G. were still sitting on the couch watching TV. Guerrero and C.R. were gone between twenty-five and forty-five minutes.

While C.R. and Guerrero were gone, A.S. moved from the living room floor to the couch near where Appellant was sitting. At some point, M.G. left the living room. A.S. testified that, while only he and Appellant were in the room, Appellant reached over a cupholder, stuck his hand inside A.S.'s pants, and touched

A.S.'s "bad part," at which point A.S. jerked away causing Appellant to scratch him. A.S. testified that Appellant told him: "Don't tell, I won't ever do it again."

Guerrero and C.R. subsequently returned from their errand. C.R. noticed that A.S. was being "kind of clingy" and quiet after they returned. C.R. asked A.S. if anything was wrong, and he responded that he was just tired. It had gotten late in the evening, so C.R. decided to take the children home.

C.R. subsequently dropped A.S. off with his father, Scott Strauss. At trial, the State called Strauss as the outcry witness. While bathing A.S., Strauss noticed what appeared to be a rash on the underside of A.S.'s penis, and Strauss applied lotion to the area. When Strauss bathed A.S. the next day, he noticed that the area looked worse—like it was infected—and asked A.S. what caused it. A.S. told Strauss that it happened when Appellant touched his penis. A.S. told Strauss that it occurred when M.G. left the room and that Appellant jerked his hand away when M.G. returned.

Donna Doyle, a certified sexual assault nurse, examined A.S. During the examination, A.S. recounted the same version of events that he had told Strauss and testified to at trial. In her report, Doyle noted that there was "a linear healing abrasion . . . on the bottom of the shaft of [A.S.'s] penis." She testified that "it was not a rash that I saw, it was absolutely an abrasion." Doyle also photographed the injury, and the photograph was published to the jury.

*Analysis*

In his first issue, Appellant contends that there is insufficient evidence to support his conviction for indecency with a child by contact. Specifically, Appellant asserts that the evidence of contact between Appellant and A.S. was contradictory and misleading and failed to show that the contact was sexual in nature. He contends that the State's evidence failed to show sexual contact because no one saw the incident; because there was no testimony that Appellant received gratification from

3

the contact; and because "[n]o evidence was presented [that] Appellant had his pants off, had an erection, or made sexually suggestive comments."

We review a challenge to the sufficiency of the evidence, regardless of whether it is denominated as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

A person commits the offense of indecency with a child by contact if he "engages in sexual contact with [a] child" younger than seventeen years of age. PENAL § 21.11(a)(1). "Sexual contact" means "any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child," if the act is "committed with the intent to arouse or gratify the sexual desire of any

person." *Id.* § 21.11(c)(1). Although Appellant admits that "the evidence regarding the actual contact shows Appellant placed his hand in the complainant's shorts and jerked his hand away, leaving a scratch," Appellant contends that this is insufficient to show sexual contact because "[n]o testimony was presented [that] [Appellant] laughed, smiled, or made any remarks which demonstrated he intended to satisfy his sexual desire."

Direct evidence of what an accused intended at the time he committed the offense is rare. *See Moore v. State*, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998) ("Mental states are almost always inferred from acts and words."). As such, like other essential elements of an offense, circumstantial evidence can be used to establish intent. *See Rivera–Reyes v. State*, 252 S.W.3d 781, 785 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *Scott v. State*, 202 S.W.3d 405, 408 (Tex. App.—Texarkana 2006, pet. ref'd).

When called on to prove the offense of indecency with a child by contact, the State is not required to prove that the defendant was actually aroused; the offense only requires that the alleged act be committed with the intent to arouse or gratify the sexual desire of any person. *See Shamam v. State*, 280 S.W.3d 271, 278 (Tex. App.—Amarillo 2007, no pet.). The specific intent to arouse or gratify a person's sexual desire can be inferred from the defendant's conduct, remarks, and all the surrounding circumstances. *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. [Panel Op.] 1981); *Tienda v. State*, 479 S.W.3d 863, 873 (Tex. App.—Eastland 2015, no pet.); *Moore v. State*, 397 S.W.3d 751, 754 (Tex. App.—San Antonio 2013, no pet.). Intent can be inferred from conduct alone, and no oral expression of intent or visible evidence of sexual arousal is necessary. *Tienda*, 479 S.W.3d at 873; *Scott*, 202 S.W.3d at 408. Further, a complainant's testimony alone is sufficient to support a conviction for the offense of indecency with a child. *Tienda*, 479 S.W.3d at 873;

5

*Moore*, 397 S.W.3d at 754; *Connell v. State*, 233 S.W.3d 460, 466 (Tex. App.—Fort Worth 2007, no pet.).

With respect to a defendant's intent to arouse or gratify his sexual desire, his intent can be inferred from the act itself. *See McKenzie*, 617 S.W.2d at 216. In this case, the evidence shows that Appellant stuck his hand inside A.S.'s pants and made contact with A.S.'s penis. This is not conduct that is consistent with any type of innocent or childcare activity. *See Montgomery v. State*, 810 S.W.2d 372, 396 (Tex. Crim. App. 1990). Instead, it is conduct that permits a rational factfinder to infer that Appellant committed the act with the intent to arouse or gratify his sexual desire. *See McKenzie*, 617 S.W.2d at 216. Additionally, Appellant told A.S. not to tell anyone what had happened and said that he would not do it again. A defendant instructing a complainant not to reveal an event indicates consciousness of wrongdoing, which in turn leads to the inference that he harbored the specific intent to arouse or gratify his sexual desires. *Montgomery*, 810 S.W.2d at 396. Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found that Appellant touched A.S.'s genitals with the intent to arouse or gratify Appellant's own sexual desires. We overrule Appellant's first issue.

In Appellant's second issue, he contends that the trial court abused its discretion by admitting evidence of extraneous offenses related to Appellant's 2004 conviction for aggravated sexual assault of a child. The State provided Appellant notice under Article 38.37 of its intent to introduce extraneous offense evidence during the guilt/innocence phase. TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2 (West 2018). This notice listed three minor victims: M.M., B.M., and I.M.[1] The notice alleged that, in December 2001 in El Paso, Appellant caused the penetration of the

---

[1]M.M., B.M., and I.M. were subsequently adopted, and they are now known as M.J., B.J., and I.J.

sexual organ, anus, and mouth of each of the minor victims. The notice further alleged that Appellant pleaded guilty to theses offenses in cause number 20030D03092 in El Paso County, Texas.

Prior to trial, the trial court held a hearing on the State's notice as required by Section 2 of Article 38.37. At the hearing, the State introduced a "pen pack" regarding Appellant's 2004 conviction in cause number 20030D03092 for three counts of aggravated sexual assault of a child. The judgment indicated that Appellant pleaded guilty to three offenses. However, the judgment did not list the name of the victim or victims for the three counts of aggravated sexual assault of a child for which Appellant was convicted. The State also called B.J. to testify at the Article 38.37 hearing. She testified that, when she was four, and her sisters M.J. and I.J. were six and two, respectively, Appellant came into their bedroom and sexually assaulted them. The trial court subsequently entered a written order prior to trial permitting the State to introduce the evidence under Article 38.37.

Appellant lodged numerous objections to the extraneous offense evidence at both the pretrial hearing and at trial. Immediately prior to B.J.'s trial testimony, Appellant's counsel advised the trial court that he had just determined that M.J. was the only victim for the El Paso County conviction. Appellant asserted that the Article 38.37 hearing only pertained to the offenses for which Appellant was convicted in El Paso County. The trial court disagreed by determining that the State's notice and the hearing pertained to the offenses alleged to have occurred against all three minors.

At the end of its case-in-chief, the State called B.J. to testify about the sexual assaults that she testified about at the Article 38.37 hearing. B.J. testified that, when she was four years old, Appellant came to her home to see B.J.'s biological mother. Appellant and B.J.'s mother were doing drugs in the living room. B.J. and her two-year-old sister, I.J., and her six-year-old sister, M.J., were also in the living room.

B.J. testified that Appellant was talking to B.J.'s mother but "kept looking at me and my sisters." Appellant told B.J. and her sisters to go to their room. Appellant made the girls get onto the bed, and he began touching them "under [their] clothes." Appellant then took B.J. and I.J. off the bed, but he kept M.J. on the bed. Appellant "took off [M.J.'s] clothes and he started having sex with her." B.J. further testified:

> [W]hen he was done with my big sister, he got me onto the bed. He took off my clothes as well. And he put his penis into my vagina. I -- I kept crying. But I couldn't look at him because I knew what was happening. . . . And what I was going through, it hurt, a lot. It felt like it was going on forever when it was only a little bit of time. I could feel his hands everywhere. The pain, it was very excruciating. By the time he was done with me, he had got my little sister. He did the same thing to her as well.
>
> And when he was done with us, he just left us in the room. It was me and my sisters. We stayed there, we were crying, and he left. No one came to get us, they just left us in there.

Appellant makes several arguments on appeal regarding the extraneous offense evidence. He first argues that the trial court could not have adequately conducted a Rule 403 balancing test because of the timing of the trial court's ruling. *See* TEX. R. EVID. 403. He contends that the trial court should not have ruled on the Rule 403 objection prior to trial. Appellant also asserts that the trial court erred in determining that the probative value of the evidence was not substantially outweighed by the prejudicial effect. Appellant also argues that the evidence was inadmissible under Article 38.37 because the extraneous offenses were not sufficiently similar to the charged offense. Finally, he argues that the extraneous offense evidence was inadmissible because the State did not properly comply with the notice provision of Article 38.37.

Whether to admit evidence at trial is a preliminary question to be decided by the trial court. TEX. R. EVID. 104(a); *Tienda v. State*, 358 S.W.3d 633, 637–38 (Tex. Crim. App. 2012). We review a trial court's ruling on the admissibility of evidence

8

for an abuse of discretion. *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007). We will uphold the trial court's decision unless it lies outside the zone of reasonable disagreement. *Id.* (citing *Montgomery*, 810 S.W.2d at 391).

We will first address the admissibility of the evidence under Article 38.37, and then we will address Rule 403. Under Article 38.37, section 2, notwithstanding Texas Rules of Evidence 404 and 405, and subject to Article 38.37, section 2-a, evidence that a defendant has committed certain offenses against a child may be admitted in the trial of a defendant for indecency with a child "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." CRIM. PROC. art. 38.37, § 2(b); *see Lara v. State*, 513 S.W.3d 135, 141 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Article 38.37 supersedes the application of Rule 404(b), making extraneous offense evidence admissible that Rule 404(b) would preclude. *Hitt v. State*, 53 S.W.3d 697, 705 (Tex. App.—Austin 2001, pet. ref'd); *see Lara*, 513 S.W.3d at 141.

Under Article 38.37, the State must give notice at least thirty days before trial of its intention to introduce evidence of other offenses the defendant committed as described in Section 2, including aggravated sexual assault of a child, sexual assault of a child, and indecency with a child. CRIM. PROC. art. 38.37, §§ 2, 3; *see Lara*, 513 S.W.3d at 141. Appellant contends that the extraneous offense evidence was "inadmissible as the State did not properly comply with the notice provisions" of Article 38.37, section 3. He asserts that the notice was defective because the El Paso County conviction in the pen packet that the State offered at the hearing related only to M.J. We disagree with Appellant's contention. While it was subsequently determined that the conviction only applied to M.J., the State's Article 38.37 notice was not restricted only to the conduct reflected in the El Paso County conviction. The State's Article 38.37 notice indicated that the State intended to offer evidence

that Appellant committed the penetration of the sexual organ, anus, and mouth of M.J., B.J., and I.J. The notice further indicated that the acts were committed on or about December 2001 in El Paso. Accordingly, the trial court did not abuse its discretion by determining that the State provided sufficient notice under Article 38.37 for extraneous offense evidence pertaining to all three minor victims.

Appellant also asserts that the extraneous offense evidence was inadmissible under Article 38.37 because it was not sufficiently similar to the charged offense. He bases this assertion on the fact that the extraneous offenses involved the penetration of young female victims that he knew, whereas this case involves sexual contact of a young male victim that he did not know. However, there is no requirement in Article 38.37, section 2 that the extraneous offenses of "sexual misconduct" that are admissible under the statute must be of the same type of sexual misconduct for which the defendant is being tried. *See Aguillen v. State*, 534 S.W.3d 701, 711 (Tex. App.—Texarkana 2017, no pet.) (noting that Article 38.37, section 2 permits the introduction of extraneous offenses in the nature of "sexual misconduct of some sort").[2] Furthermore, the extraneous offenses in this case share a common fact to the charged offense—they both involve offenses of a sexual nature committed against minors. "Children often are targeted for these crimes, in part because they tend to make poor witnesses." *Harris v. State*, 475 S.W.3d 395, 402 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (quoting Senate Comm. on Criminal Justice, Bill Analysis, Tex. S.B. 12, 83d Leg., R.S. (2013)). The trial court did not abuse its discretion by determining that the extraneous offense evidence was admissible under Article 38.37.

---

[2]Appellant's reliance on *Aguillen* is misplaced because the extraneous offense in *Aguillen* was not of a sexual nature. 534 S.W.3d at 711–12. Thus, Article 38.37 was inapplicable in *Aguillen*. *Id.*

When evidence of a defendant's extraneous acts is relevant under Article 38.37, the trial court is still required to conduct a Rule 403 balancing test upon proper objection or request. *Belcher v. State*, 474 S.W.3d 840, 847–48 (Tex. App.—Tyler 2015, no pet.). Under Rule 403, a trial court may exclude relevant evidence if its probative value is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403; *see Young v. State*, 283 S.W.3d 854, 874 (Tex. Crim. App. 2009). "Rule 403 favors admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002); *Render v. State*, 347 S.W.3d 905, 921 (Tex. App.—Eastland 2011, pet. ref'd). Evidence is unfairly prejudicial when it has the undue tendency to suggest an improper basis for reaching a decision. *Reese v. State*, 33 S.W.3d 238, 240 (Tex. Crim. App. 2000); *Render*, 347 S.W.3d at 921.

In reviewing a trial court's determination under Rule 403, a reviewing court is to reverse the trial court's judgment "rarely and only after a clear abuse of discretion." *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999) (quoting *Montgomery*, 810 S.W.2d at 392). When conducting a Rule 403 analysis, the trial court must balance:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest [a] decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). These factors may well blend together in practice. *Id.* Rule 403, however, does not require that the balancing test be performed on the record. *Greene v. State*, 287 S.W.3d 277, 284 (Tex. App.—Eastland 2009, pet. ref'd). In overruling a Rule 403 objection, the trial court is assumed to have applied a Rule 403 balancing test and determined that the evidence was admissible. *Id.*

Appellant contends that the trial court could not have adequately conducted a Rule 403 balancing test prior to trial "before hearing any of the State's evidence regarding the offense to which Appellant was charged, defense counsel's cross-examination, or its opening statement." After the Article 38.37 hearing, the trial court issued a written order allowing the State to introduce the extraneous offense evidence. In addition to making the finding required by Article 38.37, section 2 a(1), the trial court found that, "in accordance with Rule 403 . . . , the probative value of the evidence likely to be admitted at trial outweighs the danger of any unfair prejudice, confusion of the issues[,] or misleading the jury." At trial, however, the court held another hearing regarding the admissibility of the extraneous offense evidence. This hearing occurred prior to B.J.'s testimony after the State had presented the bulk of its case-in-chief. Appellant re-urged his Rule 403 objection during this hearing. After hearing arguments from Appellant and the State, and after taking judicial notice of all of Appellant's objections made at the Article 38.37 hearing, the trial court reaffirmed its previous ruling that the extraneous offense evidence was admissible. Accordingly, we disagree with Appellant's assertion that the trial court made an inappropriate ruling on the Rule 403 objection prior to trial because the trial court revisited the ruling prior to B.J.'s trial testimony.

With respect to the merits of his Rule 403 objection, Appellant contends that the trial court erred because the prejudicial effect of the extraneous offense evidence substantially outweighed its probative value. We review a trial court's ruling under

Rule 403 for an abuse of discretion. *Pawlak v. State*, 420 S.W.3d 807, 810 (Tex. Crim. App. 2013). This standard requires an appellate court to uphold a trial court's evidentiary ruling when it is within the zone of reasonable disagreement. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002); *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). We will uphold the trial court's ruling on the admission or exclusion of evidence if the ruling was proper under any legal theory or basis applicable to the case. *See Martinez v. State*, 91 S.W.3d 331, 336 (Tex. Crim. App. 2002).

The first two *Gigliobianco* factors focus on the inherent probative force of the proffered evidence and the State's need for it. As the Court of Criminal Appeals explained in *Gigliobianco*, "probative value" is more than just relevance. 210 S.W.3d at 641. It refers to how strongly an item of evidence "serves to make more or less probable the existence of a fact of consequence to the litigation[,] coupled with the proponent's need for that item of evidence." *Id.* As noted in *Distefano v. State*, "[A]rticle 38.37 expands a trial court's analysis under Rule 403 of the probative value of qualifying extraneous offense evidence by allowing the trial court to consider character conformity evidence." 532 S.W.3d 25, 37 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). "Evidence that [a defendant] has previously sexually assaulted a child is probative that his actions toward the complainant[] were not innocent actions that were misinterpreted as sexual but were, in fact, done with an intent to arouse or gratify [the defendant's] sexual desire." *Bezerra v. State*, 485 S.W.3d 133, 141 (Tex. App.—Amarillo 2016, pet. ref'd). We disagree with Appellant's argument that the extraneous offenses were not sufficiently similar to the charged offense to constitute probative evidence. As previously noted, the victims were young like the victim in this case. Additionally, Appellant waited in both instances until the victims were isolated before assaulting them.

With respect to the State's need for the evidence, as is often the case with sexual offenses against children, the State's case came down mostly to A.S.'s version of the events. Appellant's cross-examination of A.S. focused on A.S.'s credibility and inconsistencies in his testimony. There were no eyewitnesses to corroborate A.S.'s testimony, and the State's other witnesses merely related what A.S. had told them. As such, it was reasonable for the trial court to conclude that the extraneous offense evidence had probative value and that the State had a need for it.

The remaining *Gigliobianco* factors focus on the potential negative effects of the proffered evidence. The third factor focuses on the tendency of the evidence to suggest a decision on an improper basis. Extraneous offenses that involve the sexual assault of children are inherently inflammatory and prejudicial. *Montgomery*, 810 S.W.2d at 397; *Newton v. State*, 301 S.W.3d 315, 320 (Tex. App.—Waco 2009, pet. ref'd). In this case, the extraneous offenses were more serious than the charged offense. Accordingly, this factor weighs in favor of exclusion. We note, however, that the trial court also included a jury instruction in the jury charge regarding the extraneous offense evidence.[3] We presume the jury obeyed this instruction. *See Resendiz v. State*, 112 S.W.3d 541, 546 (Tex. Crim. App. 2003) (appellate courts presume that the jury follows instructions). Thus, the trial court took measures to mitigate the potential improper influence of B.J.'s testimony. *See Gaytan v. State*,

---

[3]The trial court instructed the jury as follows:

> The Defendant is on trial solely on the charge contained in the indictment. Regarding evidence, if any, that the Defendant previously participated in transactions or acts involving [M.J.], [B.J.], and [I.J.], you are instructed that you cannot consider such other transactions or acts, if any, for any purpose against the Defendant unless you find and believe beyond a reasonable doubt that the Defendant participated in such transactions or committed such acts, if any, and even then you may only consider the same . . . for any bearing the evidence has on relevant matters, including the character of the Defendant and acts performed in conformity with the character of the Defendant. Evidence of other crimes, wrongs, or acts, if any, committed by the Defendant, does not lessen the presumption of innocence or the State's burden of proof.

14

331 S.W.3d 218, 228 (Tex. App.—Austin 2011, pet. ref'd); *Newton*, 301 S.W.3d at 320.

The fourth factor focuses on the potential of the proffered evidence to confuse or distract the jury from the main issues. This factor weighs in favor of admission because B.J.'s testimony was not confusing and because it was relevant to whether Appellant touched A.S. with the intent to arouse our gratify his own sexual desires. The fifth factor focuses on the potential of the proffered evidence to mislead the jury. As noted by the court in *Distefano*, the order in which evidence is presented can lessen the potential for extraneous offense evidence to confuse or mislead the jury. 532 S.W.3d at 34. In this case, B.J. testified at the end of the State's case-in-chief, thereby reducing its potential to confuse the jury. Additionally, we have previously noted that the trial court gave a limiting instruction. Finally, the sixth factor focuses on the time needed to present the proffered evidence and whether it is cumulative of other evidence. B.J.'s testimony lasted less than nine minutes during the guilt/innocence phase of the trial that spanned three days.

In summary, the extraneous offense evidence in this case was prejudicial. However, Rule 403 contemplates excluding evidence only when there is a "clear disparity" between the offered evidence's prejudice and its probative value. *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (quoting *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001)). Considering the standard of review, the presumption favoring admissibility of relevant evidence, and the *Gigliobianco* factors, we cannot conclude that the trial court abused its discretion in overruling Appellant's Rule 403 objection. *See Hammer*, 296 S.W.3d at 568 ("Because Rule 403 permits the exclusion of admittedly probative evidence, it is a remedy that should be used sparingly, especially in 'he said, she said' sexual-molestation cases that must be resolved solely on the basis of the testimony of the

15

complainant and the defendant."(footnote omitted)).   We overrule Appellant's second issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


December 19, 2019

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[4]

Willson, J., not participating.

---

[4] Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.