**Affirmed and Majority Memorandum Opinion filed February 6, 2023.**



In The

# Fourteenth Court of Appeals

## NO. 14-22-00515-CR

**ANDREW SCOTT RIGGS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 89th District Court
Wichita County, Texas
Trial Court Cause No. 56,662-C**

## MAJORITY MEMORANDUM OPINION[1]

Appellant Andrew Scott Riggs was convicted with indecency with a child by sexual contact and sentenced to five-years imprisonment. His three-issue appeal challenges the trial court's admission of the State's evidence—expert testimony about the reasons for the complainant's delayed outcry, evidence about two extraneous acts involving complainant which appellant contends was inadmissible

---

[1] Justice Spain concurs without opinion.

character-conformity evidence, and evidence of a third extraneous act for which appellant contends reasonable notice was lacking. The State responded, arguing that each issue appellant raises was not preserved, that each evidentiary ruling was not erroneous, and that even if it were, no harm resulted from the evidentiary admission. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A grand jury indicted Appellant with indecency with a child by sexual contact. The grand jury alleged that with the intent to arouse or gratify his own sexual desire, appellant had touched Rowana's[2] breast.

Appellant was Rowana's second uncle by marriage, and she called him "Uncle Drew." Rowana was 18 years old at time of trial. Appellant and Rowana's mother, Kathy, became romantically involved when Rowana was six, and appellant moved in with the family in a home in Wichita Falls in 2009. Rowana testified that appellant began to come into her room to cuddle and rub her back when she went to bed. She testified that one time when she was about twelve, she awoke to find appellant's hand "under her bra on her left boob." She testified that the same touching occurred many times after that, but she was afraid to tell her mom. On one occasion, Rowana explained, when she lay in bed with her back to him, appellant put his penis between her legs and moved it back and forth. This incident also was not reported.

Rowana testified appellant's incursions into her room that involved inappropriate touching occurred "regularly" for several years. In mid-2012, Rowana spoke to a counsellor, Carrie Gardner (also known as "Carrie Andree"), for the first time, not to deal with issues related to appellant, but to deal instead

---

[2] To protect the complainant's identity, we have not used her actual name since she was a minor at the time of the offense. *See* Tex. R. App. P. 9.8.

with issues related to her grandfather's death with whom Rowana had been close. Rowana did not mention any sexual contacts with appellant during those first counselling sessions in 2012.

Kathy, Rowana's mother, testified that in mid-2012, she walked in on appellant in her daughter's bedroom at 3 a.m. to find appellant in Rowana's twin bed. Kathy testified that appellant was wearing a t-shirt and boxers. Kathy said he stumbled from the bed with a beer bottle in his hand, and that appellant denied doing anything inappropriate with Rowana and went to take a shower. Notwithstanding his claim of innocence, Kathy called police and CPS. Rowana was taken to Patsy's House in Wichita Falls for her first forensic interview. At the time Rowana was 9 years-old, and she denied anything inappropriate had occurred between her and appellant. Anticipating a potential prosecution, Wichita Falls police gathered evidence from the home including Rowana's bedclothes, a DNA swab from appellant, as well as his boxer shorts retrieved from the family's clothes hamper. After Rowana denied in her forensic interview that anything inappropriate had occurred, the case was dropped.

Kathy testified that soon after she left appellant and moved with her three children, (Rowana, Rowana's brother Manuel, and Rowana's new baby brother by appellant, Baby), to Garland for a time. But, after a short stay, the four moved back to Wichita Falls to live with appellant once more. In 2015, the relationship soured again, and Kathy moved out of the house with her children to Burkburnett. There, she soon took up with a new boyfriend, Stephan, whom she eventually married.

One day during a cookout around July 4th of 2015, when Rowana was alone with Stephan outside the house, Rowana suggested to Stephan, her stepfather, that appellant had touched her inappropriately. Stephan told Rowana's mother about the conversation. Rowana then told her mother appellant had "touched her" but

wouldn't say more.    Kathy took Rowana back to her counsellor, Ms. Gardner, hoping she would open up about what had happened. Eventually, following directives from police, Rowana also went for a second forensic interview at Patsy's House in Wichita Falls. There, she related to the forensic interviewer that appellant had touched her "boobs" and had rubbed his penis between her thighs.   She told the interviewer that appellant's inappriate contacts had occurred a number of times over the years – on a "weekly" basis, she said – and that once, while she had her back to him, he had put his penis between her thighs and pushed it back and forth. She also told the interviewer appellant had one time tried to guide her hand to his penis, and, on another occasion, had attempted to masturbate, using her feet to "give himself a foot job".

Shannon Althouse, the forensic interviewer for Rowana's 2012 and 2015 forensic interviews, testified that Rowana made outcry to her in the forensic interview in 2015 as alleged in appellant's indictment and as set forth above. She had made no outcry in 2012. Althouse also testified that during the 2015 interview, Rowana was approximately 12 years-old, she was consistent in the details she described, she said the abuse occurred regularly over the course of years, and she recounted specific sensory impressions related to the alleged sexual contacts.

Several forensic experts testified concerning their efforts to compare appellant's known DNA samples to evidence gathered at the scene in 2012 when police had initially investigated claims by Kathy that appellant had acted inappropriately with her daughter. DNA forensic scientists from Garland's DPS lab testified to finding two semen cells in underwear appellant allegedly wore in the 2012 incident. After the State presented testimony that two semen cells were found in those boxer shorts from 2012, the defense elicited testimony from the same lab scientists that normal ejaculate contains hundreds of millions of such cells, and that

4

the scientists could not tell when or how the two sperm cells got on appellant's underwear. One DNA expert also admitted the cells could have survived machine washings – from which it could be inferred the two semen cells had been on the underwear long before the incident in question.

Various police officers testified about extracting data from appellant's cell phone using Cellebrite technology. The officer's testimony established that several texts were retrieved from appellant's cellphone. These texts were read to the jury. In those texts, appellant apologized to his wife for "abusing [Rowana's] trust" in 2015 when he went into her room and lay in her bed. The State implied the various messages were admissions of guilt.

In his defense, appellant presented several witnesses that testified to his good character and to Rowana's bad reputation for truthfulness. For example, Ricardo, appellant's first cousin, testified that Rowana's reputation for truthfulness was bad. Ricardo also testified that she had grown up with Rowana, that she had seen Rowana and appellant interact on a weekly if not daily basis, and that she had never seen any inappropriate behavior on appellant's part toward Rowana.

Appellant testified that he and Rowana's mother were both alcoholics, but he denied he ever did anything inappropriate with Rowana. He also testified about the incident in 2012 where his then-wife found him in Rowana's bed. He told the jury he had fallen asleep in Rowana's bed after a night of heavy drinking on the night in question, but he maintained he had originally gone into the child's bedroom to comfort her and help her get to sleep – something he often did. He maintained that his efforts to comfort his stepdaughter were innocent.

Appellant testified that the apologies reflected in the texts were intended to address his decision to enter Rowana's bedroom uninvited to comfort himself during his on-going bouts with depression and were not meant as apologies for any

5

inappropriate behavior.

The jury deliberated and found appellant guilty as charged.

During the punishment phase, appellant presented five witnesses in defense of his character and witnesses, including Rowana's father, who continued to attack Rowana's credibility. The jury assessed five years' confinement and a $2,000 fine. The trial court sentenced appellant accordingly and signed a judgment reflecting the conviction and sentence. He appealed.

## II. ISSUES AND ANALYSIS

Appellant raises three evidentiary issues, to each of which the State responds with a threefold attack: first, challenging appellant's trial counsel's preservation of each issue at trial, then contending each disputed trial-court ruling as errorless, and finally arguing that regardless, the purported errors were harmless.

### A. General standards for reviewing reversible error on preserved complaints of admissibility.

First, we consider whether an appellant has preserved his or her complaint on appeal by making a timely objection, request or motion to the trial court in a sufficiently specific manner and properly under the Rules. See Tex. R. App. P. 33.1; See also Tex. R. Evid. 103.

Second, a question of error concerning the admissibility of evidence is reviewed for an abuse of discretion. *Blasdell v. State*, 470 S.W.3d 59, 62 (Tex. Crim. App. 2015)(admissibility of expert testimony; stating a "trial judge's decision to admit expert testimony is reviewed for an abuse of discretion and may not be reversed unless that ruling fell outside the zone of reasonable disagreement"); *James v. State*, 623 S.W.3d 533, 541 (Tex. App.—Fort Worth 2021, no pet.) (admissibility of extraneous act under article 38.37 with Rule 403

6

balancing test reviewed for an abuse of discretion); *Gonzalez v. State*, 541 S.W.3d 306, 310 (Tex. App.—Houston [14th Dist.] 2017, no pet.)(same).

Finally, when necessary or for expediency, we address whether the error harmed the appellant. With respect most evidentiary complaints, including those at issue, which do not involve a constitutional error, we consider whether the trial court's error (or presumed error) in admitting the evidence in question has affected the substantial rights of appealing party. See Tex. R. App. P. 44.2(b); *Lara v. State*, 513 S.W.3d 135, 142-43 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

**B. Did the trial court reversibly err when it overruled appellant's trial counsel's objections to Andree's expert opinion testimony about the reasons for Rowana's delay in making her outcry?**

Carrie Andree[3], a licensed professional counselor, testified about the possible reasons for Rowana's delayed outcry. In his first issue, appellant contends Andree was not qualified to give this opinion. On appeal, he argues that the "State failed to satisfy any one of the requirements necessary to show [that Andree] was qualified to answer questions in the area of delayed outcry," and that instead her testimony merely "showed only that she might be familiar with that phenomenon because some of the children she counseled might have been the subject of sexual abuse and some of them might have delayed their outcry."

His current argument is at odds with his objections at trial. Before trial appellant's trial counsel stated "I don't believe that [the expert] has provided any information that correlates to making a statement regarding the [veracity] of a statement by a child," but also conceded, ". . . I do think that she . . . can speak and render an opinion on whether the child was consistent with other, you know, victims of abuse that she has worked with." Appellant's counsel did not, at that

---

[3] The record sometimes refers to Carrie Andree as Carrie Gardner.

time, object to an opinion that Andree could offer concerning reasons that a child may delay in making an outcry of sexual abuse. Appellant's counsel did not raise the objection until expert had offered significant testimony before the jury at trial.

Before appellant's counsel objected, Andree's had already begun testifying to the jury about the reasons for delayed sexual-abuse outcries. The State asked her whether she had "seen children when abuse could have been happening and they told [her] about it later," and she responded that she had. The State then asked her why "children sometimes [will] not outcry when there is abuse going on," and without objection, she testified, "I think there's a variety of reasons. . . . I think oftentimes, they're . . . ashamed, they're fearful, they're trying to forget it, so they just try not to think about it." Then again without objection, Andree testified that she has seen "people that have information like [sexual abuse] that they don't tell anybody for years."

Later, appellant's attorney objected a portion of Andree's testimony concerning the reasons for delayed sexual-abuse outcries. Andree had testified that Rowana had "reported that [appellant] had snuggled in her bed, but . . . there wasn't enough info and that was evidently dismissed. So that too would be a reason to maybe not make an outcry if you said something and it got dismissed or not." Appellant's counsel's objection was that Andree's testimony about the possible reasons for delayed outcries was "beyond the scope of . . . what she's been certified to testify to." The objection was overruled.

The State then elicited testimony establishing that Andree had taken several courses concerning trauma in children and that in her twenty-four years as a licensed professional counselor, she had "dealt with a lot of children" who had been sexually abused. Appellant asked the trial court to recognize his running objection to Andree's testimony concerning the possible reasons for delayed

outcries, and the trial court recognized the running objection. The State then continued on her qualifications, and Andree agreed her opinions were based her "training and experience, the ones you went through in education and [her] 24 [years] as an LPC." She testified again that a possible reason for the delayed outcry would be that when the matter had first been raised there had "already not been a lot of attention, but had been kind of dismissed."

In considering the question of preservation we note that Andree had begun testifying about the reasons for a delayed outcry, and it would seem (consistent with appellant's counsel's pretrial remarks) in some respects based on her experience with "victims of abuse that she has worked with." If appellant preserved any objection on appeal, he preserved only his complaint to the narrow opinion offered: Andree's testimony that a child sexual assault victim who had previously attempted to make an outcry but who was then ignored or dismissed could explain or justify the child's delay before coming forth later to provide another outcry. The basis asserted by appellant's trial counsel—outside the scope of "what she's been certified to testify to"—could be construed as a complaint concerning notice (not asserted on appeal), but also could be a complaint about her qualifications to offer such testimony (which appellant has asserted on appeal). Though we are reluctant to conclude these narrow objections raised at trial were sufficient to preserve the error asserted on appeal we will presume that they were; however, we conclude that appellant did not object to any of Andree's other opinions, including reasons for a child's delayed outcry. Tex. R. App. P. 33.1.

Even if we presume for the sake of argument that appellant's objections preserved error as to Andree's qualifications to opine on the reasons for delayed outcries, and that the trial court erred in allowing this testimony, we are not persuaded such error was harmful.

9

The improper admission of objected-to evidence is generally harmless when that evidence is cumulative of other evidence that is admitted without objection. *Rosales v. State*, 548 S.W.3d 796, 809 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd); *see also Brown v. State*, No. 02-18-00489-CR, 2020 WL 7063297, at *7 (Tex. App.—Fort Worth Dec. 3, 2020, pet. ref'd) (mem. op., not designated for publication) ("[W]hen the erroneous admission of evidence is cumulative of other properly admitted evidence proving the same fact, the erroneous admission is considered harmless."). In deciding the question of harm, an appellate court should consider "(1) the character of the alleged error and how it might be considered in connection with other evidence, (2) the nature of the evidence supporting the verdict, (3) the existence and degree of additional evidence indicating guilt, and (4) whether the State emphasized the complained-of error." *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018).

Appellant argues that he was harmed by the admission of the challenged portion of Andree's testimony because it "provided the causative link between [his] actions and [Rowana's] delayed accusations—bolstering the State's case where [Rowana's] truthfulness had been put at issue." But the jury had already heard unchallenged testimony from Andree about delayed outcries, and subsequently heard significant additional testimony about the reasons for delayed outcries from three other witnesses.[4] Given that unchallenged-on-appeal evidence

---

[4] Shannon Althouse, who had forensically interviewed Rachel in 2012 and again in 2015, testified that delayed outcries may occur if when victims become afraid because the alleged offender is a family member ("component of support") and agreed that when a child knows that person no longer has that role in the child's life it would be easier for the child to make an outcry. Walter Vermillion, a Wichita Falls police officer, also testified about the possible reasons for delayed outcries and testified that a child may delay an outcry until the child is not living in the same home as the perpetrator of abuse. Finally, Dr. Katrina Cook, holding a doctorate degree in clinical psychology and serves as director of clinical services at the Dallas Children's Advocacy Center, provided extensive testimony about the dynamics of sexual abuse of children, including topics as grooming and the progression of normal to abusive behaviors in

is cumulative of the narrow portion of Andree's challenged testimony, Appellant cannot demonstrate harm from the admission of the challenged testimony. See Tex. R. App. P. 44.2(b); *See Brown*, 2020 WL 7063297, at *7; *Rosales*, 548 S.W.3d at 800.

Additionally, we cannot agree with appellant's suggestion that the challenged testimony was so significant as to providing any causative link in the jury's reasoning that led to its verdict. The State's questioning on the subject of appellant's narrow objection followed roughly only a page after the court overruled appellant's objection, whereas the guilt-innocence evidence comprises of four volumes. Considering the "character of the alleged error . . . in connection with other evidence," the record does not support a conclusion that the few questions and answers likely impacted the jury's verdict or affected appellant's substantial rights. *See Upchurch v. State*, 656 S.W.3d 170, 183 (Tex. App.—Fort Worth 2022, no pet.).

Upon our review of the record, we cannot find that the State subsequently emphasized the challenged testimony that served the alleged error. Rather, any strength of opinion testimony at issue that had been elicited in direct examination, through appellant's counsel's cross-examination of Andree became significantly diminished. Appellant's counsel questioned Andree about the challenged opinion, and she recognized that she "[didn't] know" about whether the lack of prosecution or consequence flowing from a prior incident would contribute to a delayed outcry in a case, like Rowana's case, where a child had denied at the time of the prior incident that abuse had occurred. Appellant's effective cross-examination of the

---

an adult toward a child. Cook, likewise, testified that that a child may not tell about abuse until the child feels safe and supported, and stated that it was "not uncommon" for an abused child to deny that abuse occurred in an initial forensic interview and to disclose the abuse in a later interview.

sole complained-of opinion offered by Andree suggests a lack of harm to appellant. *See O'Brien v. State*, 482 S.W.3d 593, 619 (Tex. App.—Houston [1st Dist.] 2015) (considering in a harm analysis that the challenged evidence was "effectively refuted on cross-examination"), *aff'd*, 544 S.W.3d 376 (Tex. Crim. App. 2018).

We therefore overrule appellant's first issue.

## C. Did the trial court reversibly err when it overruled appellant's trial counsel's objections to the admission of two extraneous bad acts the State offered under article 38.37?

In appellant's second issue he complains that the trial court abused its discretion when it overruled appellant's trial counsel's objections to the admission of two extraneous bad acts the State offered under article 38.37. He contends that the trial court abused its discretion by admitting evidence that appellant had touched Rowana's thighs and that he had forced her hand toward his penis.

Generally, extraneous crimes, wrongs, or other acts are not admissible during the guilt phase of a trial in order to prove the defendant's character and that the defendant committed the charged offense in conformity with the character. Tex. R. Evid. 404(b); *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). Exceptions exist, however, and one is contained in article 38.37 of the Code of Criminal Procedure. Under article 38.37, when a defendant is charged with a sexual offense, including indecency with a child, "[n]otwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including: (1) the state of mind of the defendant and the child; and (2) the previous and subsequent relationship between the defendant and the child." Tex. Code Crim. Proc. Ann. art. 38.37, § 1(a)(1)(A), (b). That is, when article 38.37 applies, it "supersedes

12

application of Rule 404(b), making admissible extraneous offense evidence that Rule 404(b) does not." *Lara v. State*, 513 S.W.3d at 141.

### 1. *Additional Background Relevant to the Issue*

In various pretrial filings, the State provided notice of its intent to present evidence of appellant's bad acts that were extraneous to the charged offense, including the two extraneous acts challenged by appellant in his second issue. In addition to acts committed on specific dates, the notice included various other acts not challenged on appeal, including acts occurring through a timespan, including between January 1, 2011 and January 1, 2015, that appellant committed the offenses and bad acts of "grooming".

After the jury had been empaneled, but outside its presence, the court held a hearing to determine the admissibility of the extraneous acts. At the hearing, Rowana testified that beginning when she was eight years old and ending when she was eleven, appellant had acted in ways that had made her uncomfortable, including kissing her cheek, asking her to kiss his cheek, rubbing her back, putting his hands on her thighs, and snuggling with her. Rowana testified that on one occasion, when she woke up in the middle of the night, her bra was unclasped, and appellant's hand was on her breast. When she turned away, appellant then put his hand on her butt. Rowana testified that on another occasion, appellant grabbed her hand, put it on his chest, and then attempted to drag it toward his penis before she pulled it away. On other occasions, appellant placed his hand on her breasts over her clothes. One night, appellant placed his penis between Rowana's legs; "it was hard[,] and he was . . . thrusting it." On yet another occasion, he used her feet to "give himself a foot job through his shorts."

At the end of the hearing outside of the jury's presence, the State informed the trial court that under article 38.37, it intended to offer evidence of the incident

when appellant had placed his penis between Rowana's legs, the incidents when he had touched her breasts, the incident when he had contacted her butt, incidents when he had touched her thigh, incidents when had touched her back, and the incident when he had moved her hand toward his genitals.

Appellant generally objected to admission of the extraneous acts on the grounds that (1) a "handful of" the incidents that Rowana had described were based on conclusory testimony and not evidence by which the jury could determine beyond a reasonable doubt that they occurred, and (2) evidence of all of the incidents would be substantially more unfairly prejudicial than probative under Texas Rule of Evidence 403. Appellant counsel also asserted arguments based on "due process and due course of law under the Texas and United States Constitutions", and the prohibition against facing trial on matters other than those for which one is charged, as is found in "the history Anglo-Saxon jurisprudence."

In his second issue, appellant complains about the admission of two extraneous acts: (1) that appellant touched Rowana's thigh; and (2) that appellant forced Rowana's hand toward his genitals.

## 2. Preservation of Rule 404(b) Analysis

As part of his second issue challenging the admission of these two extraneous acts, appellant contends that evidence of the acts was inadmissible under Rule 404(b). But appellant never made that argument to the trial court; rather, he objected on other grounds. To preserve a complaint about the admission of evidence, a party must object in such a way that makes the trial court aware of the objection's basis. Tex. R. App. P. 33.1(a)(1)(A). When an appellate complaint about the admission of evidence does not comport with a trial-court objection, nothing is preserved for review. Although we do not analyze preservation of error in a hyper-technical manner, the error on appeal must comport with the objection

14

made at trial. *Singleton v. State*, 631 S.W.3d 213, 218 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd)(finding appellant's complaint on notice of extraneous acts not preserved when appellant objected only to exhibits offered at trial to support extraneous act evidence); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) ("A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial."); *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) ("Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial."). Because appellant never asked the trial court to exclude evidence of his extraneous bad acts on the basis of rule 404(b), he forfeited his rule 404(b) argument for this court's review. See Tex. R. App. P. 33.1(a)(1)(A); *See Singleton v. State*, 631 S.W.3d at 218.

Accordingly, "notwithstanding" rule 404(b), evidence of the two extraneous acts against Rowana was admissible in the prosecution of the indecency charge against him to show his state of mind, her state of mind, and their relationship. See Tex. Code Crim. Proc. Ann. art. 38.37, § 1(b).

### 3. Rule 403 Analysis

Under the remainder of appellant's second issue, he argues that in conducting its Rule 403 balancing test and subsequently admitting the two extraneous acts—that he had touched Rowana's thighs and that he had forced her hand toward his penis—the trial court abused its discretion.

If extraneous-offense evidence is relevant and admissible under article 38.37, it is subject to exclusion if its probative value is substantially outweighed and if rule 403 is raised in the trial court. *Sanders v. State*, 255 S.W.3d 754, 760 (Tex. App.—Fort Worth 2008, pet. ref'd). Recognizing that the trial court is in a superior position to gauge the impact of the evidence, we measure the trial court's

15

ruling against the rule 403 balancing criteria: (1) the inherent probative force of the evidence along with (2) the State's need for the evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *See Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App 2006).

Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will generally be more probative than prejudicial. *See Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). Appellant bears the burden to overcome this presumption and demonstrate that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice or of misleading the jury. *Sanders*, 255 S.W.3d at 760.

The probative force of the extraneous-offense evidence and the State's need for the evidence were high. The extraneous bad acts were probative to illustrate appellant's intent toward Rowana and his grooming of her. The jury heard unchallenged evidence from an expert witness—Dr. Cook—that a perpetrator of sexual abuse often declines to lead with a criminal act and instead "test[s] the waters to see what [he] can . . . get away with." Dr. Cook testified that grooming is the "intentional manipulation by a perpetrator of a child . . . in order to gain access to a child and control over a situation such that a child is less likely to fight against abuse." She also explained, "Some different types of grooming include physical, so I think that's what a lot of people think of, you touch on the shoulder and then on the knee and then on the inner thigh. It's that build up." Accordingly,

16

Rowana's testimony about how appellant had touched her thighs was highly probative to show that he had groomed her—he had both tested the waters and intentionally manipulated her—before sexually abusing her.

Additionally, the extraneous acts assisted in rebutting appellant's defensive theories. One defensive theory concerned his allegation that in the 2012 incident, he had slept with her and had touched her only for the purpose of easing his own anxiety. The extraneous incident in which he placed Rowana's hand on his fast-beating heart and then forced her hand toward his penis with force rebutted his defensive theory that his relationship with Rowana was benign or innocent.

Accordingly, appellant's extraneous bad acts were highly probative of material issues affecting his guilt, and the State's need for the evidence was high, factors showing that the trial court did not clearly abuse its discretion by admitting the evidence. *See James v. State*, 623 S.W.3d at 547.

Additionally, the two extraneous acts did not have a significant tendency to suggest a decision on an improper basis or to confuse or distract the jury from the main issues. The jury was not left unequipped to properly assess the evidence or to evaluate its probative force. *See Id.*

The trial court instructed the jury that with respect to the extraneous-act evidence, the jury was to consider the evidence only if it believed beyond a reasonable doubt that appellant committed the acts, and even then, the jury was to consider the acts only for the statutory purposes discussed above and not "to prove that [appellant was] a bad person and for this reason was likely to commit the charged offense." The trial court's limiting instruction mitigated against any tendency to suggest a decision on an improper basis or confuse the jury, and thus supports the admission of the challenged evidence.

17

In light of Rowana's delayed outcry, the physical evidence linking appellant to the charged offense,[5] carried limited probative value. Appellant consistently attacked Rowana's credibility at trial, pointing out inconsistencies in her two outcries. The State's presentation of Rowana's testimony was not repetitive, nor did it take up an inordinate amount of time during the two-day, guilt-innocence portion of the trial. *See Holley v. State*, No. 02-20-00051-CR, 2021 WL 1918769, at *4 (Tex. App.—Fort Worth May 13, 2021, no pet.) (mem. op., not designated for publication) (considering the "exceedingly brief amount of time during trial that the prosecutor used to develop the alleged bad act").

Applying the applicable standard of review and measuring the trial court's ruling against the rule 403 balancing criteria, we concluded the trial court did not err in its Rule 403 assessment of the two challenged extraneous acts. *See Upchurch*, 656 S.W.3d at 176; *James*, 623 S.W.3d at 546–47.

We therefore overrule appellant's second issue.

**D. Did the trial court reversibly err when admitted other extraneous act evidence over appellant's trial counsel's objections that the State had failed to provide reasonable notice?**

In his third issue, appellant complains that the trial court abused its discretion when it overruled his objection to the extraneous-act evidence that he had touched Rowana's "butt" because the State's pretrial extraneous-offense notice alleged only that he had touched Rowana's "anus," not her "butt." Specifically, at number 9 (of 18) requested extraneous acts, the State alleged:

On or about October 1, 2012, in Wichita County, Texas, the defendant

---

[5] The state provided testimony about appellant's semen cells found on his own underwear collected by complainant's mother on the day of the offense. However, on cross-examination the forensic expert explained the cells could have remained on the underwear after multiple laundry cycles.

did then and there, with the intent to arouse or gratify the sexual desire of said defendant, engage in sexual contact with [Rowana], a child who was then and there younger than 17 years of age, by touching the anus of the said [Rowana] with the defendant's hand.

When Rowana testified about his extraneous acts outside of the jury's presence, she stated that one night, she awoke to find his hand on her breast, and he then "moved his hand and . . . put it on [her] butt." She then specified that appellant had "rested his hand on [her] left butt cheek." Later, appellant objected to the evidence of his touching Rowana's "butt" because the State's notice had alleged only that he had touched her "anus." The trial court overruled his objection and admitted the evidence. Rowana then testified to the jury that Appellant had touched her butt.

Rule 404(b) provides that the notice of the State's intent be "reasonable notice ... in advance of trial." Tex. R. Evid. 404(b). The purpose behind the notice provision is to adequately make known to the defendant the extraneous offenses the State intends to introduce at trial and to prevent surprise to the defendant. *Self v. State,* 860 S.W.2d 261, 264 (Tex. App.—Fort Worth 1993, pet. 'ref'd); *Martin v. State*, 176 S.W.3d 887, 900 (Tex. App.—Fort Worth 2005, no pet.)

He maintains on appeal that given that the body parts were "distinctly different" that his trial counsel was caught flat-footed, that he:

had no opportunity to investigate the allegation, now to be admitted as an extraneous matter, that he was also accused of touching a butt cheek instead of an anus. While there may be no bright line on the amount of notice required under the applicable statute, surely one could agree that mere minutes is not sufficient when the State changes the notice in mid-hearing.

Appellant did not provide this explanation to the trial court or any other argument about how variance between "anus" and "butt" had affected his preparation for trial, and he did not request a continuance so that he could prepare

for the evidence that he had touched Rowana's butt.

Appellant's failure to request a continuance in conjunction with his objection waives his complaint which is rooted in the theory that he was unfairly surprised. *Martin v. State*, 176 S.W.3d at 900 (concluding appellant "waived any complaint that he was surprised by the State's [38.37] notice" after finding "nothing in the record to indicate that [the appellant] requested a continuance"). That is, under the transferor court's jurisprudence, appellant's complaint is not preserved. *See id*.; *See also Greer v. State*, No. 2-09-087-CR, 2010 WL 2813404, at *4 (Tex. App.—Fort Worth July 15, 2010, pet. ref'd) (mem. op., not designated for publication); *but see Lara v. State*, 513 S.W.3d at 143 (failure to request continuance a significant fact considered in harm analysis; thus, where appellant failed to show how the late notice affected his trial strategy in a request for continuance or otherwise the error was found harmless). We therefore, overrule appellant's third issue.[6]

### III. CONCLUSION

Having overruled appellant's three issues we affirm the trial court's judgment.

/s/     Randy Wilson
        Justice

Panel consists of Justices Jewell, Spain, and Wilson. (Spain, J. concurring without opinion)

Do not publish — Tex. R. App. P. 47.2(b)

---

[6] When our case law differs, we resolve complaints under the law of the transferor court. See Tex. R. App. P. 41.3. In resolving this transferred case, our holding and reasoning fixes upon neither all those here nor there, but only on those immediately before us. See Tex. R. App. P. 41.3; *see also In re Reardon*, 514 S.W.3d 919, 922–23 (Tex. App.—Fort Worth 2017, no pet.). As our transferor court has noted, we cannot establish binding precedent for that court. *In re Reardon*, 514 S.W.3d at 922–23.